DeWitt Ross & Stevens, S.C., Plaintiff-
Respondent-Cross-Appellant,†

v.

Galaxy Gaming and Racing Limited Partnership,
and Galaxy Casinos, Inc., Defendants-Co-
Appellants-Cross-Respondents,†

Southwest Florida Enterprises, Inc., Defendant-
Appellant-Cross-Respondent.†

Court of Appeals

*No. 02–0359. Submitted on briefs September 10, 2002.—Decided
August 21, 2003.*

2003 WI App 190

(Also reported in 670 N.W.2d 74.)

† Petition to review granted 12-16-03.

237

238

On behalf of the defendants-co-appellants-cross-respondents and the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Robert H. Friebert, S. Todd Farris,* and *Jennifer L. Bolger* of *Friebert, Finerty & St. John, S.C.,* Milwaukee.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Anthony R. Varda* of *DeWitt Ross & Stevens, S.C.,* Madison.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Galaxy Gaming and Racing Limited Partnership, Galaxy Casinos, Inc., and Southwest Florida Enterprises, Inc., appeal a judgment awarding $407,489.79 to DeWitt, Ross & Stevens, S.C., for legal services provided to Galaxy Gaming and Galaxy Casinos. Galaxy Gaming, Galaxy Casinos, and Southwest have submitted joint appellate briefs. There is no indication in those briefs that any of the three companies does not join in all of the arguments contained in the briefs. Thus, we will often refer to argument made by the "Companies," a reference to all

three companies. Further, there is seldom reason to distinguish between Galaxy Gaming and Galaxy Casinos and, therefore, we will refer to these two companies as the "Galaxy Partnership."

¶ 2. The Companies argue that the circuit court erred in ruling that a guaranty executed by Southwest on Galaxy Partnership's behalf included interest. The Companies also contest the circuit court ruling that DeWitt was entitled to apply payments first to outstanding interest. They separately contend that the circuit court erred in awarding double costs under the offer of settlement statute. And, the Companies appeal the circuit court's denial of Southwest's request for substitution of judge.

¶ 3. DeWitt cross-appeals, asserting that the circuit court erred by concluding that interest under the contract did not begin to accrue until December 1, 1997, and that 12% interest under Wis. Stat. § 807.01(4) (2001–02)[1] was not awardable on the amount recovered. DeWitt also contends that the circuit court erred in not allowing the cost of a transcript of a videotaped deposition.

¶ 4. We agree that Southwest is liable for interest owed by Galaxy Partnership, that DeWitt could apply payments first to interest, and that it was appropriate to award double costs because of the rejection of DeWitt's settlement offer. We also agree that the circuit court properly denied Southwest's substitution request and properly denied DeWitt prejudgment interest under Wis. Stat. § 807.01(4). However, we conclude that the circuit court erroneously excluded the deposition transcript as an item of costs. Finally, we determine

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

that interest under the contract began to accrue not on December 1, 1997, but at the beginning of that year. Accordingly, we affirm in part and reverse in part.

## Background

¶ 5. This is a suit to recover legal fees incurred by Galaxy Partnership during litigation against the City of Hudson. Galaxy Partnership sought approval for an Indian casino at the St. Croix Meadows dog track in Hudson. When the federal government denied approval of the casino, Galaxy Partnership decided to sue the City of Hudson, with whom it had negotiated an agreement for governmental services. Galaxy Partnership retained DeWitt, and Fred Havenick, president of Galaxy Partnership, signed a retainer letter.[2] With respect to the fees charged for legal services, the retainer letter provided:

> [Y]ou will be billed for disbursements and other expenses incurred on behalf of [Galaxy] Partnership (for example, long distance telephone charges, photocopying, facsimile charges, travel expenses, court reporter fees and other similar disbursements or expenses). You will receive a statement for services rendered and expenses incurred on a monthly basis. The statements are payable upon receipt. We reserve the right to charge interest at the rate of 18% per annum (1½% per month) on all statements not paid within 20 days after their date.

---

[2] Fred Havenick was president of Galaxy Casinos, not Galaxy Gaming. But Galaxy Casinos is the general partner of Galaxy Gaming and, in keeping with our decision to refer to Galaxy Gaming and Galaxy Casinos collectively as Galaxy Partnership, we similarly refer to Havenick as president of Galaxy Partnership.

¶ 6. Because Galaxy Partnership had no assets or means of earning income until the casino project became a reality, the retainer letter required that a guaranty of payment be provided. The guaranty was executed by Southwest, which wholly owned Galaxy Casinos, the general partner of Galaxy Gaming. Fred Havenick is also president of Southwest and signed the guaranty in his Southwest capacity. The guaranty reads:

> The undersigned, for valuable consideration and the willingness of . . . DeWitt, Ross & Stevens, S.C. to represent [Galaxy] Partnership, all of which inures to my benefit, hereby personally guaranties the timely and full payment of all statements for services rendered and disbursements/expenses incurred on behalf of [Galaxy] Partnership. In the event of a failure of [Galaxy] Partnership to pay the monthly statements as they fall due, the undersigned agrees that the law firms may, in the first instance, look to the undersigned for payment without having to exercise or exhaust any remedies against [Galaxy] Partnership.

¶ 7. In the fall of 1996, as activity in the suit against the city increased and the monthly statements were for larger amounts, Galaxy Partnership began to fall behind in its payments to DeWitt. On November 24, 1997, when the outstanding balance was over $129,000, Attorney Anthony Varda, the DeWitt partner handling the case, wrote Havenick and demanded that the amount owed be paid in full by December 1, 1997, or DeWitt would charge interest at 18% on the balance. Shortly thereafter, the Companies made a payment of $50,000. Although the monthly statements did not include an interest charge, Attorney Varda sent Havenick a separate letter with an attached invoice showing an interest charge of $7,863.40 for 1997.

¶ 8. Over the next two years, Attorney Varda repeatedly asked Havenick to pay the balance, and sporadic payments were made. When payments were made, DeWitt first applied the payments to the accrued interest and then applied any remaining amount to the outstanding principal.

¶ 9. At the conclusion of the City of Hudson litigation, DeWitt sent Havenick a final bill showing a total balance of $352,172.59 as of July 31, 2000, including $69,209.44 in interest. No payment was made, and DeWitt sued the Companies to enforce the retainer letter and guaranty. The amount claimed was $396,847.86, including interest through April 1, 2001. Initially, only Galaxy Partnership was served with DeWitt's complaint. In its answer to the complaint, Galaxy Partnership admitted "there are monies due and owing to [DeWitt]," but alleged that the amount sought included "interest and other charges and expenses" that Galaxy Partnership did not owe. Subsequently, after being served, Southwest filed an answer substantially identical to Galaxy Partnership's, but in addition stated that it was not liable under the guaranty for interest owed by Galaxy Partnership.

¶ 10. Galaxy Partnership moved for a protective order, requesting that depositions be delayed until it had the opportunity to review discovery materials. In response, DeWitt moved to compel discovery. The circuit court denied Galaxy Partnership's motion, granted DeWitt's motion to compel discovery, and imposed costs of $100.00 on Galaxy Partnership. Subsequently, Southwest, which was served with DeWitt's complaint after the circuit court decided the discovery motions, moved for substitution of judge. The circuit court denied this motion as untimely. Southwest requested review by the

Fifth Judicial District chief judge of the denial of substitution, and the chief judge affirmed the circuit court.

¶ 11. On July 9, 2001, DeWitt offered to settle its claims, provided that the Companies pay $370,000 within fifteen days of the Companies' acceptance of the offer, which the Companies declined. DeWitt then moved for summary judgment on the question of Southwest's liability under the guaranty for principal and interest due. The circuit court concluded that DeWitt could apply payments first against accrued interest if it chose to do so, and that Southwest's obligation under the guaranty included liability for interest payments. However, the circuit court ruled that DeWitt could not recover interest on the unpaid balance prior to November 24, 1997, the date DeWitt informed the Companies that it would begin assessing interest. Accordingly, the circuit court denied that part of DeWitt's summary judgment motion seeking interest retroactive to January 1, 1997.

¶ 12. The circuit court entered judgment against the Companies in the amount of $407,498.79, plus postjudgment interest of 12% pursuant to WIS. STAT. § 815.05(8) commencing on January 1, 2002. Because the judgment obtained by DeWitt exceeded the offer of settlement, the circuit court awarded DeWitt double costs pursuant to WIS. STAT. § 807.01(3). However, the circuit court declined to award § 807.01(4) interest in addition to the 18% contractual interest that DeWitt was already entitled to during the same time period, and declined to award costs for a transcript of Havenick's videotaped deposition.

## *Appeal*

¶ 13. The Companies assert that summary judgment was erroneously granted with respect to four issues. The Companies argue that: (1) Southwest is not liable under the guaranty for interest owed by Galaxy Partnership; (2) DeWitt is not entitled to apply payments to interest before applying them to principal; (3) DeWitt is not entitled to double costs under WIS. STAT. § 807.01(3) because DeWitt did not make a valid settlement offer; and (4) the circuit court erroneously denied Southwest's motion for substitution of judge.

¶ 14. We review summary judgment decisions *de novo,* applying the same method as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That method is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

*Whether Southwest Is Liable Under the Guaranty for Interest Charges Owed by Galaxy Partnership*

¶ 15. We first address whether the guaranty executed by Southwest includes not only principal Galaxy Partnership owes DeWitt for legal services, but also interest charges of 18% on the overdue balances. Southwest argues that because the guaranty does not mention interest, but instead refers to "the timely and full payment of all statements for services rendered and disbursements/expenses incurred on behalf of the Partnership," DeWitt's recovery from Southwest is limited to principal only. DeWitt counters that the guarantee of "timely and full payment" unambiguously guarantees payment for interest charges. We agree with DeWitt.

¶ 16. A guaranty is a contract. *Harris v. Metropolitan Mall*, 112 Wis. 2d 487, 503, 334 N.W.2d 519 (1983). Where the facts are undisputed, the interpretation of a contract presents a question of law, which we review *de novo. Northern States Power Co. v. National Gas Co.*, 2000 WI App 30, ¶ 7, 232 Wis. 2d 541, 606 N.W.2d 613. The goal of contract interpretation is to ascertain the intent of the parties, and to discern this intent we look to the language of the contract. *J.G. Wentworth S.S.C. Ltd. P'ship v. Callahan*, 2002 WI App 183, ¶ 11, 256 Wis. 2d 807, 649 N.W.2d 694, *review denied*, 2002 WI 121, 257 Wis. 2d 120, 653 N.W.2d 891. "Courts must read contracts to give a reasonable meaning to each provision and avoid a construction that renders portions of a contract meaningless. *Isermann v. MBL Life Assurance Corp.*, 231 Wis. 2d 136, 153, 605 N.W.2d 210 (Ct. App. 1999). Generally, " 'instruments executed at the same time between the same contracting parties in the course of the same transaction will be construed together.' " *Harris*, 112 Wis. 2d at 496 (quoting *Wipfli v. Bever*, 37 Wis. 2d 324, 326, 155 N.W.2d 71 (1967)).

¶ 17. There is good reason to read the retainer letter and the guaranty in tandem. Physically, they were presented to Havenick as one document—the guaranty is page four of the letter from DeWitt. More to the point, the retainer letter conditions approval of representation on execution of the guaranty, thus requiring that the retainer letter and guaranty be read together.

¶ 18. Reading the guaranty and retainer letter in tandem, the Companies nonetheless argue that, under the guaranty, Southwest is only liable for "disbursements" and "expenses" and the plain meaning of these

terms does not encompass interest. We agree with the Companies that interest is not encompassed by the terms "disbursement" and "expense." These terms are modified in the guaranty with the phrase "incurred on behalf of the Partnership." Regardless whether, generally speaking, the terms "disbursement" or "expense" include interest, the interest charged to Galaxy Partnership by DeWitt is plainly not a disbursement or expense incurred by DeWitt on behalf of Galaxy Partnership.

¶ 19. Still, we conclude that Southwest unambiguously agreed to cover Galaxy Partnership's obligation to pay interest charges to DeWitt. Southwest guaranteed "timely and full payment." Interest is a measure of the time value of money. *See Wyandotte Chems. Corp. v. Royal Elec. Mfg. Co.*, 66 Wis. 2d 577, 582, 225 N.W.2d 648 (1975). As DeWitt points out, when Southwest guaranteed "timely and full payment," the only reasonable interpretation is that Southwest was liable for the consequences of untimely and deficient payments. Otherwise, Southwest's guarantee of "timely and full payment[s]" would be rendered meaningless. *See Isermann*, 231 Wis. 2d at 153 (we avoid constructions that render portions of a contract meaningless).

*Whether DeWitt Must Apply Payments to the Principal Before Paying Off the Interest Portion of the Bill*

¶ 20. The Companies next argue that the circuit court erred in ruling that DeWitt was free to apply the payments it received first to interest, with the remaining amount going to principal. The retainer letter is silent regarding how payments will be credited, and the

Companies concede that they never objected to DeWitt's calculations, nor did they inform DeWitt that they expected payments to be applied to principal before being applied to the accrued interest. Instead, the Companies assert that, because of the fiduciary nature of the attorney-client relationship, DeWitt had an obligation to inform them that DeWitt could direct payments to either interest or principal, or that DeWitt was required by its fiduciary duty to debit principal first. This argument is unavailing.

¶ 21. While a debtor having multiple accounts may direct where payment is to be credited, *Waukesha Concrete Products Co. v. Capitol Indemnity Corp.*, 127 Wis. 2d 332, 341, 379 N.W.2d 333 (Ct. App. 1985), when there is only one debt there is no right to require the creditor to apply payments to principal first. It is a longstanding rule that, in the absence of any agreement between the parties, "a partial payment is first applied to discharge the interest then due, and any surplus goes to discharge principal; interest thereafter is computed on the remaining balance." *Estreen v. Bluhm*, 79 Wis. 2d 142, 159, 255 N.W.2d 473 (1977).[3]

---

[3] This rule is part of the federal common law known as the "United States Rule." 47 C.J.S. *Interest* § 74a, at 164 (1982). While a debtor having multiple accounts may direct where payment is to be credited, "[the United States] Rule does not permit the debtor unilaterally to allocate payments to principal rather than interest." *Southern Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1088 n.11 (5th Cir. 1986). *See id.* at 1087–88 & n.11 (noting the distinction between the United States Rule and a debtor's right to direct payment when there are multiple debts).

¶ 22. We are not convinced by the Companies' argument that a different rule should apply here because this is a fee agreement between an attorney and client, as opposed to some other commercial transaction. While it is the attorney's responsibility to clearly draft the terms of the fee agreement, and any ambiguity will be construed against the drafter, *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 508, 577 N.W.2d 617 (1998), there is no ambiguity here. The general rule regarding payments, as set forth in *Estreen*, supplies the missing provision in the retainer letter. When the Companies failed to remit timely and full payment, thereby breaching the terms of the retainer letter, DeWitt could assess interest on the overdue balance and, when payments were made, could apply those payments to outstanding interest. Indeed, the failure to apply payments to outstanding interest first would undercut the very purpose of interest, that is, to compensate a party for the time value of money.[4]

### *Whether DeWitt Tendered a Valid Settlement Offer Under Wis. Stat. § 807.01(3)*

¶ 23. The Companies argue that the settlement offer was invalid for the purposes of Wis. Stat. § 807.01(3) because it contained a payment deadline. We disagree.

¶ 24. Before turning to the merits, we address DeWitt's argument that this issue is not properly before

---

[4] Southwest's argument that DeWitt used its leverage as the Companies' lawyer to modify the contract is unpersuasive. We have already held that DeWitt did not modify the contract; DeWitt merely invoked the right it possessed to interest since execution of the contract.

us because the notices of appeal filed by the Companies only reference the circuit court's December 11, 2001, "Decision and Order" granting summary judgment to DeWitt and the judgment entered on January 2, 2002, but not the January 24, 2002, order of costs giving DeWitt double costs under Wis. Stat. § 807.01. DeWitt notes that, under Wis. Stat. § 809.10(4), "[a]n appeal from a final judgment or final order brings before the court all *prior* nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon" (emphasis added), and argues that the January 24 order was not "prior" to the judgment entered on January 2. We do not accept DeWitt's construction of § 809.10(4).

¶ 25. The general rule is that statutes giving the right of appeal are liberally construed. *Soquet v. Soquet*, 117 Wis. 2d 553, 560, 345 N.W.2d 401 (1984). Thus, we have held that a notice of appeal need only sufficiently identify a judgment or order so that there is no doubt as to what is appealed from. *State v. Ascencio*, 92 Wis. 2d 822, 825, 285 N.W.2d 910 (Ct. App. 1979); *Rhyner v. Sauk County*, 118 Wis. 2d 324, 326, 348 N.W.2d 588 (Ct. App. 1984) ("We deem it immaterial that the notice of appeal referred only to one order for judgment . . . ."). "There is no requirement that the notice set forth the date of the order or judgment appealed from." *Ascencio*, 92 Wis. 2d at 825. Pursuant to Wis. Stat. § 806.06(1)(c), "[a] judgment is perfected by the taxation of costs and the insertion of the amount thereof in the judgment," and so the order of costs becomes part of the judgment. It would run counter to § 806.06(1)(c) to conclude that the Companies have not sufficiently described the documents from which they appeal.

251

¶ 26. Turning to the merits, the Companies argue that DeWitt's settlement offer was not valid under WIS. STAT. § 807.01(3) because it included a payment deadline. This challenge raises a question of statutory interpretation, which we review *de novo. State v. Sveum,* 2002 WI App 105, ¶ 5, 254 Wis. 2d 868, 648 N.W.2d 496, *review denied,* 2002 WI 111, 256 Wis. 2d 64, 650 N.W.2d 840.

■■■

¶ 27. WISCONSIN STAT. § 807.01 sets forth the procedure for settlement offers. Section 807.01(3) provides:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.[5]

(Footnote added.) "[T]he purpose of Wis. Stat. § 807.01 . . . is to encourage settlement and accordingly, secure just, speedy and inexpensive determinations of

---

[5] WISCONSIN STAT. § 807.01(4) provides that if a valid settlement offer is made under § 807.01 and the party recovers a judgment equal to or greater than the amount in the settlement offer, that party is entitled to 12% interest on the amount recovered from the date of the settlement offer until it is paid. We separately analyze the application of this subsection in DeWitt's cross-appeal.

disputes." *Prosser v. Leuck*, 225 Wis. 2d 126, 140, 592 N.W.2d 178 (1999). DeWitt's offer of settlement contains the following terms and conditions:

> Plaintiff DeWitt Ross & Stevens S.C. hereby offers to settle and release all claims in the above-captioned matter, including claims for costs, sanctions, attorneys fees and interest, for payment to it from any of the above-named Defendants, or any combination of the above-named Defendants, in the amount of $370,000 to be made within 15 days of acceptance of this offer.

¶ 28. The Companies argue that DeWitt's offer is invalid because the presence of a payment deadline conflicts with the intent of WIS. STAT. § 807.01. In the Companies' view, when a settlement offer is made and accepted, the plaintiff may obtain a judgment against the defendant for the agreed amount, but "[h]ow and when the defendant satisfies the judgment is a separate matter." DeWitt responds that this argument confuses an offer of settlement with an offer of judgment. According to DeWitt, by requiring payment within a certain time, DeWitt's settlement offer merely reflects the reality that an accepted offer of judgment often provides little assurance of future payment.

¶ 29. Nothing in WIS. STAT. § 807.01(3) precludes a party from submitting an offer of settlement that contains a payment deadline. As pointed out by DeWitt, the statute provides that an offer may be made "for the sum, or property, or to the effect therein specified." WIS. STAT. § 807.01(3). As long as the offer permits the party ten days to respond, as DeWitt's offer does, we find no language in the statute that prohibits conditioning settlement upon the actual receipt of the money by a date certain.

¶ 30. At the same time, "a construction [of WIS. STAT. § 807.01] that would *force* a settlement rather than merely *encourage* one is not a proper construction of the statute." *Blank v. USAA Prop. & Cas. Ins. Co.*, 200 Wis. 2d 270, 280, 546 N.W.2d 512 (Ct. App. 1996). Similarly, we said in *White v. General Casualty Co. of Wisconsin*, 118 Wis. 2d 433, 439–40, 348 N.W.2d 614 (Ct. App. 1984), that § 807.01(3) and (4) cannot be used to unreasonably force settlement.

■■■

¶ 31. The logical corollary to the above principles is that an offer is not effective under WIS. STAT. § 807.01(3) if it imposes an unreasonable condition. The Companies do not argue that DeWitt's particular offer was unreasonable, and they have not directed our attention to any evidence showing they wished to resolve the case but were unable to comply with DeWitt's deadline. Rather, the Companies only argue that an offer of settlement with a payment deadline is *per se* invalid. We conclude that a deadline for making payment is just one factor to consider in determining whether an offer is unreasonable, such that the offering party should not be awarded double costs under § 807.01(3). In this case, if the Companies thought the particular payment deadline was unreasonable, they should have pursued that argument in the circuit court.

■■■

¶ 32. Accordingly, we reject the Companies' assertion that a settlement offer under WIS. STAT. § 807.01(3) containing a payment deadline is *per se* invalid.

*Whether Southwest Was Entitled to a Substitution
of Judge*

■

¶ 33. Finally, the Companies assert that the circuit court erroneously denied Southwest's request for substitution of judge. Whether or not a party is entitled to a substitution of judge under Wis. Stat. § 801.58(1) and (3) presents an issue of statutory interpretation, which we review *de novo*. *State ex rel. Sielen v. Circuit Court*, 176 Wis. 2d 101, 106, 499 N.W.2d 657 (1993). The general procedure for substitution of judge is set forth in § 801.58(1), which provides, in pertinent part:

> Any party to a civil action or proceeding may file a written request, signed personally or by his or her attorney, with the clerk of courts for a substitution of a new judge for the judge assigned to the case. The written request shall be filed preceding the hearing of any preliminary contested matters and, if by the plaintiff, not later than 60 days after the summons and complaint are filed or, if by any other party, not later than 60 days after service of a summons and complaint upon that party.

■

¶ 34. In addition, "parties united in interest and pleading together shall be considered as a single party." Wis. Stat. § 801.58(3). Subsections 801.58(1) and (3) are read together, such that "if one . . . party presents its views in a preliminary contested matter, all parties united in interest and pleading together are barred from filing a motion for substitution." *State ex rel. Carkel, Inc. v. Circuit Court*, 141 Wis. 2d 257, 265–66, 414 N.W.2d 640 (1987).

¶ 35. The facts relevant to this issue are undisputed. Before Southwest was served with the complaint, Galaxy Partnership filed a motion for an emer-

gency protective order. In response, DeWitt moved to compel discovery. Southwest was not served with the complaint until after the circuit court granted DeWitt's motion to compel.

¶ 36. When Southwest filed a motion for substitution of judge, the circuit court denied the motion as untimely under WIS. STAT. § 801.58(1) and (3). On appeal, the Companies challenge the circuit court's conclusions that the discovery motion hearing was a hearing on a preliminary contested matter and that Southwest and Galaxy Partnership were united in interest and pleading together. We reject the Companies' challenge.[6]

¶ 37. We first conclude that Galaxy Partnership's motion for a protective order, DeWitt's motion to compel, and the hearing on those motions constitute a "preliminary contested matter" for purposes of WIS. STAT. § 801.58(1). The supreme court's *Sielen* decision compels this conclusion. *See Sielen*, 176 Wis. 2d at 114 ("a hearing on a motion to compel discovery is a hearing on a preliminary contested matter within the meaning of sec. 801.58(1), Stats."). The *Sielen* court quoted *Carkel* with approval to explain that the legislative intent underlying § 801.58(1) was to prevent a party from "testing the waters" and then requesting a different judge. The court identified the dispositive question as "whether the hearing concerned a substantive issue which went to the merits of the case." *Sielen*, 176 Wis. 2d at 113.

---

[6] Because we conclude that substitution was properly denied under WIS. STAT. § 801.58(1), we need not determine whether it was necessary for Southwest to file a petition for a supervisory writ as a predicate to challenging the circuit court's ruling on appeal.

¶ 38. In an attempt to distinguish *Sielen*, the Companies argue that Galaxy Partnership's motion concerned only the timing and sequence of discovery and, therefore, the motion did not affect a substantive issue going to the merits of the case, nor did it potentially bar discovery. The Companies' characterization of the motion is belied by statements made by Galaxy Partnership at the hearing. Galaxy Partnership argued against allowing DeWitt to depose two nonparty individuals, asserting that "[t]hese depositions . . . are unnecessary and they won't lead to any relevant evidence." By asking that the depositions be suspended, Galaxy Partnership sought to narrow the scope of discovery. Thus, the hearing addressed a substantive issue that affected the presentation of the case. In light of these circumstances, we conclude that *Sielen* is controlling and the discovery motion hearing was a preliminary contested matter within the meaning of Wis. Stat. § 801.58(1).

¶ 39. We now consider whether the relationship between Galaxy Partnership and Southwest is such that they are "united in interest and pleading together" and are, therefore, deemed a single party. The term "united in interest" applies to parties to a lawsuit who " 'are similarly interested in and will be similarly affected by the determination of the issues involved in the action.' " *Carkel*, 141 Wis. 2d at 267 (quoting Black's Law Dictionary 1375 (5th ed. 1979)). The party seeking substitution has the burden to demonstrate that it is not a party united in interest and pleading together with another party to the action. *Carkel*, 141 Wis. 2d at 266.

¶ 40. According to the Companies, although Southwest and Galaxy Partnership have employed the

same attorney, they are not "united in interest and pleading together," because they are "separate entities with separate interests and different ownerships." The Companies note that Galaxy Partnership's answer admitted liability for interest and Southwest's answer denied liability for interest as guarantor and, thus, the Companies did not plead together.

¶ 41. The Companies' efforts to distinguish Southwest from Galaxy Partnership are, in the context of this action, unconvincing. Their relationship is akin to that at issue in *Carkel*. In that case, the party moving for substitution, Carkel Inc., was solely owned and controlled by another party, Gary Schwartz. Both Carkel Inc. and Schwartz were signatories to the disputed contract and were represented by the same attorney. *Id.* at 267–68. The court determined that Carkel Inc. and Schwartz had identical interests and they were united in interest. *Id.* Even though Schwartz, as plaintiff, had named Carkel Inc. as a defendant in the action, the court determined that the parties were pleading together because Schwartz, as sole plaintiff and sole shareholder, president, and primary director of Carkel Inc., had complete control over whether and how Carkel Inc. joined the action. *Id.* at 268.

¶ 42. As in *Carkel*, Galaxy Partnership and Southwest are represented by the same attorney. The three defendants are related—Havenick is president of both Southwest and Galaxy Casinos, Galaxy Casinos is the general partner of Galaxy Gaming, and Galaxy Casinos is wholly owned by Southwest. Although filed separately, Southwest and Galaxy Partnership's answers are identical with the exception of Southwest's assertion that it is not liable under the guaranty for interest charges. At the time Southwest moved for substitution, the Companies shared an interest: an

258

interpretation of the retainer letter that limits the period for which DeWitt is entitled to interest and that requires DeWitt to apply payments to principal first. They also shared an interest in avoiding having to pay their costs.

¶ 43. On this record, Galaxy Partnership and Southwest have not met their burden to prove that they are not parties united in interest and pleading together. Because Galaxy Partnership participated in a preliminary contested matter, the circuit court did not err in denying Southwest's substitution request.

### Cross-Appeal

¶ 44. DeWitt raises three issues in its cross-appeal. First, it argues that the circuit court erred by concluding that interest under the contract did not begin to accrue until December 1, 1997. Second, with respect to the taxation of costs, DeWitt contends that the circuit court erred in not allowing the cost of a transcript of Havenick's videotape deposition. Finally, DeWitt challenges the circuit court's denial of its motion for interest under WIS. STAT. § 807.01(4) on the amount recovered.

### *Whether, Under the Contract, DeWitt Was Entitled to Recover Interest Retroactive to the First Time the Balance Owed Was Overdue*

¶ 45. DeWitt argues that the circuit court erroneously concluded that, under the terms of the retainer letter, interest only began to accrue as of December 1, 1997, the date by which DeWitt informed the Companies that it would invoke the retainer letter's interest provision if DeWitt did not receive payment in full. We agree.

259

¶ 46. The retainer letter states: "We reserve the right to charge interest at the rate of 18% per annum (1½% per month) on all statements not paid within 20 days after their date." On November 24, 1997, Attorney Varda wrote Havenick that "[u]nless this account is paid off by December 1, 1997, we will apply the 18% interest rate provided for in [the] December 6, 1995, contract with you."

¶ 47. The circuit court, relying on *Estreen*, 79 Wis. 2d at 158–59, and *Waukesha Concrete*, 127 Wis. 2d at 340, interpreted the retainer letter as providing that DeWitt could not charge interest until it informed Galaxy Partnership of its intent to do so. Accordingly, the circuit court ruled that 18% interest began to accrue on the overdue account as of December 1, 1997, because that was the date by which Dewitt's November 24, 1997, letter demanded payment in full.

¶ 48. *Estreen* describes the accepted practice with respect to the accrual of interest as follows:

> The general rule as to the time at which interest begins to run on a liquidated claim is that the creditor is entitled to interest from the time payment was due by the terms of the contract and, if no such time is specified, then from the time a demand was made and, if no demand was made prior to the time of commencement of action, then from that time.

*Estreen*, 79 Wis. 2d at 158–59. When referring to "the time payment was due by the terms of the contract," the supreme court clearly meant the payment of *principal*. *Estreen* does not require a separate payment demand for the interest accumulating on a liquidated claim. Thus, the circuit court's conclusion that interest did not accrue until December 1, 1997, is incorrect. It is undis-

260

puted that the terms of the retainer letter required payment upon receipt of the monthly statements, and specified that interest would accrue if payment was not received within twenty days of receipt. Under the general rule set forth in *Estreen*, the interest due on late payments had begun to run before December 1, 1997, because "the creditor is entitled to interest from the time payment was due by the terms of the contract." *Id*. When DeWitt opted to invoke the interest charge on overdue accounts, it acted within the bounds of the retainer letter and *Estreen* in seeking interest going back to January 1, 1997.

*Videotape Deposition Costs*

¶ 49. A prevailing plaintiff is entitled to recover costs. WIS. STAT. § 814.01(1); *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 149 n.4, 549 N.W.2d 714 (1996). The circuit court allowed as costs the expense of Havenick's videotape deposition, but denied DeWitt's request to tax as costs the stenographic transcript of the deposition. DeWitt contends that the circuit court misapplied the relevant statutes. WISCONSIN STAT. § 814.04(2) authorizes imposition of costs for "[a]ll the necessary disbursements . . . allowed by law." This includes "amounts actually paid out for certified copies of papers and records in any public office; postage, telegraphing, telephoning and express; depositions including copies." *Id*. The circuit court does not have the power to allow costs which are not explicitly authorized by statute. *See Kleinke*, 202 Wis. 2d at 147. However, the court may, in its discretion, determine that the requested item of cost was not a "necessary" disburse-

ment, and deny a party costs on that basis. *See Aspen Servs., Inc. v. IT Corp.*, 220 Wis. 2d 491, 511, 583 N.W.2d 849 (Ct. App. 1998).

██

¶ 50. "We will uphold a trial court's exercise of discretion when the record shows that the court employed a process of reasoning in which the facts and applicable law are considered in arriving at a conclusion based on logic and founded on proper legal standards." *Murray v. Murray*, 231 Wis. 2d 71, 78, 604 N.W.2d 912 (Ct. App. 1999).

¶ 51. When the Companies challenged DeWitt's claim for costs for the Havenick transcript, they argued to the circuit court that a party could not recover the costs of a transcript of a videotape deposition because such an expense was disallowed by WIS. STAT. § 885.42(1). That statute provides that "[a]ny deposition may be recorded by audiovisual videotape without a stenographic transcript. Any party to the action may arrange *at the party's expense* to have a simultaneous stenographic record made." (Emphasis added.) The Companies further maintained that a transcript of the deposition was unnecessary because, in compliance with WIS. STAT. § 885.44(7), the videographer must certify "that the videotape is a true record of the testimony given by the witness." In response, DeWitt argues that the transcript was necessary to serve as supporting papers for its motion for summary judgment filed under WIS. STAT. § 802.08.[7]

---

[7] WISCONSIN STAT. § 802.08(3) provides, in pertinent part:

SUPPORTING PAPERS. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence. Copies of all papers or parts thereof referred to in an affidavit shall be attached thereto

¶ 52. The record before us does not contain a transcript of the motion hearing on costs. The minutes from the hearing note the Companies' argument that a transcript was unnecessary. Thus, while the exact reasoning followed by the circuit court is unknown, we infer that the circuit court was persuaded by the Companies' argument that WIS. STAT. § 885.42(1) precluded awarding the cost of obtaining a transcript of Havenick's deposition.

¶ 53. The circuit court's apparent reliance on WIS. STAT. § 885.42(1) as a basis for denying costs was misplaced. Section 885.42(1) provides that the party wanting a copy of the deposition must pay for it. The statute does not address whether the deposition transcript or a copy of the videotape are taxable as costs. For guidance on that question, we look to WIS. STAT. §§ 885.45 and 814.04(2). Section 885.45(2) provides that "[t]he reasonable expense of recording testimony on videotape shall be costs in the action." Subsections (3) and (6) permit the expenses associated with playing and editing the videotape, with the exception of a "videotape as a material," to be taxed as costs. In addition, under subsection (4), the expense of an audio reproduction of the videotape sound track used by the court in ruling on objections shall be costs in the action.

**[30]**

¶ 54. While WIS. STAT. § 885.45 does not contain a specific provision pertaining to transcripts, the plain language of WIS. STAT. § 814.04(2) permits awarding costs to the prevailing party for "depositions including copies." DeWitt asserts, and we agree, that the transcript of Havenick's deposition was necessary for

and served therewith, if not already of record. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

263

DeWitt's summary judgment motion because of the requirement in WIS. STAT. § 802.08 for supporting papers. Thus, this is not a situation where the transcripts were obtained solely for the convenience of counsel. *See J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n*, 114 Wis. 2d 69, 109–10, 336 N.W.2d 679 (Ct. App. 1983); *Wisconsin Sulphite Fibre Co. v. D.K. Jeffris Lumber Co.*, 132 Wis. 1, 36, 111 N.W. 237 (1907). If that were the case, costs would not be "necessary" as required by § 814.04(2). For these reasons, we conclude that the circuit court's decision was made pursuant to an erroneous view of the law and, therefore, the denial of costs for the transcript of Havenick's videotape deposition was in error.

*Whether DeWitt Is Entitled to 12% Interest Under WIS. STAT. § 807.01(4) in Addition to 18% Interest Under the Contract*

¶ 55. Pursuant to WIS. STAT. § 807.01(4), when a party whose settlement offer is not accepted recovers a judgment exceeding the settlement offer, "the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid." DeWitt contends that the circuit court erred in not awarding § 807.01(4) interest because the statute does not give the circuit court discretion to deny interest when the amount recovered is in excess of the rejected settlement offer. We disagree.

¶ 56. The Companies, relying on *Erickson v. Gundersen*, 183 Wis. 2d 106, 515 N.W.2d 293 (Ct. App. 1994), and *Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Insurance Co.*, 152 Wis. 2d 7, 447 N.W.2d 367 (Ct. App. 1989), contend that WIS. STAT. § 807.01(4) interest cannot be "stacked" on top of the 18% interest

assessed under the retainer letter. Dewitt counters that *Erickson* and *Upthegrove* present an outdated analysis of § 807.01(4) and are, therefore, distinguishable.[8]

¶ 57. The question whether DeWitt is entitled to interest under Wis. Stat. § 807.01(4), in addition to the 18% interest it receives pursuant to the terms of the retainer letter, requires the application of a statute to undisputed facts, which we review *de novo. Nelson v. McLaughlin,* 211 Wis. 2d 487, 495, 565 N.W.2d 123 (1997). In doing so, we are to ascertain and give effect to the legislature's intent. *Id.*

■■■

¶ 58. The purpose of Wis. Stat. § 807.01(4) is to encourage pretrial settlement and avoid delays. *Majorowicz v. Allied Mut. Ins. Co.,* 212 Wis. 2d 513, 538, 569 N.W.2d 472 (Ct. App. 1997). The statute, however, is silent regarding its proper application when the prevailing party is already receiving interest, either under a separate statute or, as here, under the terms of the parties' contract. The only cases the parties point to which address the stacking of interest rates in similar

---

[8] We note that DeWitt made its offer of settlement on July 9, 2001. Judgment was entered in DeWitt's favor on January 2, 2002, in the amount of $407,489.79. This figure is the sum of $272,723.74 in unpaid fees and $134,766.05 in interest, computed at 18% on the unpaid fees through December 31, 2001. Approximating the period between the settlement offer and the judgment to be one-half of a year, the judgment includes $24,545 interest for this period ($272,723 x .18 x .5). If DeWitt is also awarded interest at 12% for this six-month period on the "amount recovered," it will receive an additional $24,449 in interest ($407,490 x .12 x .5). Thus, the effective rate of interest the Companies would pay on their overdue legal bills for this period is 35.9% ($24,545 + $24,449 = $48,994 x 2 = 97,988/272,723).

fact situations are *Upthegrove* and *Erickson*. In both of those cases, we held that a party could not receive additional interest concurrent with § 807.01(4) interest.

¶ 59. In *Erickson*, we declined to "stack" interest under the offer-of-settlement statute and common law prejudgment interest. *Erickson*, 183 Wis. 2d at 124. We concluded that the prevailing party "will be adequately compensated by applying [only the statutory] twelve percent rate for the period" following the settlement offer. *Id.*

¶ 60. Similarly, in *Upthegrove*, on which we relied in *Erickson*, we concluded that 12% statutory interest recovered on a belatedly paid insurance claim could not be stacked on top of 12% interest under Wis. Stat. § 807.01(4). *Upthegrove*, 152 Wis. 2d at 12–14. We concluded that the trial court correctly terminated the insurance statute's interest rate as of the time of the settlement offer and permitted only § 807.01(4) interest to accrue thereafter. *Upthegrove*, 152 Wis. 2d at 13–14.

¶ 61. In both of those cases we held that, notwithstanding the language of Wis. Stat. § 807.01(4), a prevailing party is not entitled to recover both interest under that statute and interest from some other source for the period after an offer of settlement is made. In *Upthegrove* and *Erickson*, the other sources of interest were, respectively, another statute and the common law. In both cases we concluded that, absent a punitive intent regarding the non-§ 807.01(4) source of interest, circuit courts may not impose interest on top of § 807.01(4) interest. In doing so, we also held that there was not a punitive purpose to § 807.01(4). *See Erickson*, 183 Wis. 2d at 124. We now conclude that we are bound to follow our earlier holdings precluding the stacking of

§ 807.01(4) interest and interest from another nonpunitive source after the date of a settlement offer. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

¶ 62. DeWitt attempts to distinguish *Erickson* and *Upthegrove* because *Erickson* states, and *Upthegrove* implies, that WIS. STAT. § 807.01 is a nonpunitive statute, while other cases state that interest under § 807.01(4) is a punitive measure. DeWitt relies on *Blank*, 200 Wis. 2d at 279, and *Gorman v. Wausau Insurance Cos.*, 175 Wis. 2d 320, 329, 499 N.W.2d 245 (Ct. App. 1993). However, neither of these cases arises in the context of stacking interest on § 807.01(4) interest. Thus, *Upthegrove* and *Erickson* control here. To the extent DeWitt questions the legal underpinnings and analysis of *Upthegrove* and *Erickson*, we believe those questions are best directed to the supreme court. Although we are free to criticize our prior holdings, and to invite their review, we must nonetheless follow them. *See Cook*, 208 Wis. 2d at 189–90.

¶ 63. We next address the question of which interest rate should apply after the date of the settlement offer—the contract rate of 18% or the statutory rate of 12%. We are mindful of the rule of statutory construction that we must construe a statute to avoid an absurd result. In both *Erickson* and *Upthegrove*, we determined that only WIS. STAT. § 807.01(4) interest would accrue after the date of the settlement offer. *See Erickson*, 183 Wis. 2d at 123–24; *Upthegrove*, 152 Wis. 2d at 13–14. Utilizing that approach in this case would entail applying the 18% contract interest until the date of the settlement offer and then applying 12% interest thereafter. However, allowing § 807.01(4) interest to supplant a higher contract rate of interest as of the date of

267

an offer to settle would undermine the chief purpose of the offer-of-settlement statute—the creation of proper incentives on parties to make and to accept reasonable settlement offers before trial. *See Majorowicz*, 212 Wis. 2d at 538. If the effect of a settlement offer were to reduce the amount of interest to which an offeror is thereafter entitled upon a successful outcome at trial, a potential offeror would be ill-advised to make such an offer. And if he or she were foolish enough to make it, the offeree would face a diminished incentive to accept it because the offeree will have obtained a discount in the interest rate that would otherwise apply from that point until judgment. Applying the 12% rate in § 807.01(4) over the 18% contract rate would thus present an absurd construction of the statute. Therefore, we conclude that the 18% contract rate should apply rather than the 12% rate in § 807.01(4).

¶ 64. However, we do not apply the 18% contract rate past the date of judgment because when the question is whether a contract interest rate may apply postjudgment, the "merger doctrine" provides that statutory interest controls over contract interest in "the absence of an express agreement otherwise." *See Production Credit Ass'n v. Laufenberg*, 143 Wis. 2d 200, 204, 420 N.W.2d 778 (Ct. App. 1988). Therefore, because the contract is silent about the application of interest postjudgment, we conclude that the 12% interest rate contained in Wis. Stat. § 815.05(8) controls from "the date of the entry of the judgment until it is paid." Wis. Stat. § 815.05(8).

¶ 65. We pause to add that, even if we were not bound by precedent, we would likely reach the same result under the facts of this case. DeWitt argues for a construction of Wis. Stat. § 807.01(4) that would permit

the recovery of interest at the rate of over 30% (*see* footnote 8) from the date of the offer, an excessive rate that is not necessary to provide the offeree with an incentive to accept a reasonable offer of settlement, but one which effectively forces the offeree to accept even an unreasonable offer. That is, an offeree may in good faith believe that a particular offer of settlement is unreasonable, and may have potentially meritorious defenses to advance, but, faced with the prospect of having to pay interest at the rate of over 30% for the months (or even years) which may intervene between the offer and judgment, the offeree may believe he or she has no choice but to capitulate. The supreme court, admittedly in a different context, has explained that the legislature did not intend § 807.01(4) to force parties "to settle cases that would be more appropriately resolved by a trial." *Nelson*, 211 Wis. 2d at 503. We conclude that DeWitt's construction would have precisely this effect.

## *Conclusion*

¶ 66. Accordingly, we conclude that Southwest is liable for interest owed by Galaxy Partnership, that DeWitt could apply payments first to interest, and that the circuit court appropriately awarded double costs because of the rejection of DeWitt's settlement offer. We also conclude that the circuit court properly denied Southwest's substitution request and properly denied DeWitt prejudgment interest under Wis. Stat. § 807.01(4). However, we conclude that the circuit court erroneously excluded the deposition transcript as an item of costs. Finally, we conclude that interest under the contract began to accrue, not on December 1, 1997, but at the beginning of that year. Accordingly, we affirm in part, reverse in part, and remand for further action in accordance with this decision.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

¶ 67. DYKMAN, J. (*dissenting*). The majority has repealed WIS. STAT. § 807.01(4) (2001–02)[1] for much contract litigation. It need not have done so, because neither case law nor statutes require that result. The result is that litigants who have agreed to pay interest on their delinquent accounts will be free to use delaying tactics and refuse reasonable offers of settlement without the sanction that § 807.01(4) provides. I conclude that DeWitt Ross & Stevens., S.C. (DeWitt) may receive both § 807.01(4) interest and contractual interest. I therefore respectfully dissent.

¶ 68. There is nothing in WIS. STAT. § 807.01(4) prohibiting a litigant who has received contractual interest from attempting to settle the case by invoking the statute. The majority infers from this silence that the legislature did not intend statutory and contract interest to be stacked.[2] The majority has it backwards. I see no logic in inferring from a silent statute a legislative intent to bar a litigant who has received interest on a contract from obtaining the benefits of § 807.01(4). The best that can be said from what is not included in this statute is that the legislature did not address the question we decide today. The majority's observations concerning legislative intent do not persuade me.

¶ 69. That leaves two cases upon which the majority relies, *Erickson v. Gundersen*, 183 Wis. 2d 106,

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The majority writes: "The statute, however, is silent regarding its proper application when the prevailing party is already receiving interest, either under a separate statute or, as here, under the terms of the parties' contract." Majority at ¶ 58.

270

515 N.W.2d 293 (Ct. App. 1994), and *Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Ins. Co.*, 152 Wis. 2d 7, 447 N.W.2d 367 (Ct. App. 1989). *Erickson* first. In *Erickson*, we considered whether a prevailing litigant could collect both common law prejudgment interest and WIS. STAT. § 807.01(4) interest. We noted that because prejudgment interest was not statutory but was derived from the common law, whether to award it was a question for a court to decide. *Erickson*, 183 Wis. 2d at 123. We also noted that prejudgment interest reflects the value of the use of a liquidated obligation. *Id.* So far, *Erickson* was unremarkable. But then we wrote: "The same may be said for interest awarded under the offer-of-settlement statute, § 807.01(4), Stats. Its purpose is not punitive; it exists to encourage settlement of cases prior to trial by providing an incentive to accept reasonable settlement offers." *Id.* at 123–24.

¶ 70. Unfortunately, *Erickson* is wrong about WIS. STAT. § 807.01(4) not being a punitive statute. In *Gorman v. Wausau Insurance Cos.*, 175 Wis. 2d 320, 329, 499 N.W.2d 245 (Ct. App. 1993), we held: "Section 807.01, Stats., however, is a punitive statute imposing costs and interest, which are distinguishable from damages." In *Blank v. USAA Property & Casualty Insurance Co.*, 200 Wis. 2d 270, 279, 546 N.W.2d 512 (Ct. App. 1996), we held: "The purpose of imposing costs and interest under [WIS. STAT. § 807.01(4)] is punitive." We reiterated that § 807.01(4) interest is punitive in *Majorowicz v. Allied Mutual Insurance Co.*, 212 Wis. 2d 513, 538, 569 N.W.2d 472 (Ct. App. 1997). And in *Wilber v. Fuchs*, 158 Wis. 2d 158, 164, 461 N.W.2d 803 (Ct. App. 1990) we said: "A defendant who spurns an offer of

settlement should pay the sanctions of the statute when he or she errs in evaluating the claim against himself or herself—not others."

¶ 71. It is obvious that *Erickson* contradicts precedent published both before and after *Erickson* was published. WISCONSIN STAT. § 807.01(4) interest, according to that precedent, most certainly does not represent the time value of money, and contrary to *Erickson*, its purpose is punitive. The question then arises of how to handle conflicting court of appeals opinions.

¶ 72. The majority attempts to solve this dilemma by citing *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), where the supreme court held that the court of appeals lacks the power to overrule, modify or withdraw language from its prior published opinions. The majority concludes that it will follow *Erickson*. Superficially, that is appealing, but upon closer inquiry it becomes apparent that citing *Cook* only avoids addressing the real problem. If we are searching for the focus of WIS. STAT. § 807.01(4), why choose *Erickson*'s answer rather than *Gorman*'s or *Majorowicz*'s answers? Whether we conclude that a prior case or a subsequent case prevails in a conflict, *Erickson*, the case in the middle, comes out second best. The majority gives no explanation for choosing to rely upon *Erickson*, rather than later cases which accurately describe § 807.01(4) as punitive, or previous cases which also do so.

¶ 73. Contractual interest and common law interest reflect the time value of money. WISCONSIN STAT. § 807.01(4) serves an entirely different purpose; to punish those who improvidently "forge ahead" rather than attempt a reasonable settlement. *Oliver v. Heritage Mut. Ins. Co.*, 179 Wis. 2d 1, 19, 505 N.W.2d 452 (Ct. App. 1993). *Erickson* holds that prejudgment interest is not a penalty, but instead reflects the time value of

money. Of course, we know that is not true, because *Gorman,* *Majorowicz* and common sense tell us differently. Prejudgment interest is recovered as an element of compensatory damages. *Klug & Smith Co. v. Sommer,* 83 Wis. 2d 378, 382, 265 N.W.2d 269 (1978). And *Gorman,* 175 Wis. 2d 320, 329, holds that "Section 807.01, Stats., however, is a punitive statute imposing costs and interest, which are distinguishable from damages." The majority does not tell us why it is appropriate to reduce DeWitt's damages because DeWitt sought to encourage Galaxy Gaming to settle this case.

¶ 74. The majority correctly notes that *Gorman* and *Blank* do not arise in the context of stacking interest on Wis. Stat. § 807.01(4) interest. But that does not invalidate those cases' description of this statute as "punitive." And just as *Gorman* and *Blank* do not arise in the context of stacking interest on § 807.01(4) interest, *Erickson* and *Upthegrove* do not arise in the context of stacking contract interest on § 807.01(4) interest. It is not enough to conclude that stacking interest on interest is prohibited. That is a conclusion without a reason. To properly determine the effect of *Erickson* and *Upthegrove* on future cases requires not just that conclusion, but an inquiry into *why Erickson* and *Upthegrove* were decided the way they were. Once that inquiry is made, *Erickson* and *Upthegrove* lose their persuasive effect for the case we decide today. Noting this concern, the majority concludes that if there is a problem with these cases, the supreme court can solve it. While that is of course true, we have already done so. *State v. Bolden,* 2003 WI App 155, ¶ 10, 265 Wis. 2d 853, 667 N.W.2d 364, *review denied,* 2003 WI 126, 265 Wis. 2d 419, 668 N.W.2d 559, holds that where there is a conflict between two published court of appeals cases,

the first in time controls. Thus, the majority should follow *Gorman* rather than *Erickson*.

¶ 75. That leaves *Upthegrove*, which considered whether WIS. STAT. § 807.01(4) interest and WIS. STAT. § 628.46 interest could be stacked. The latter statute requires insurers to pay claims timely. Insurers who do not do so are required to pay twelve percent interest on overdue payments. The *Upthegrove* court reasoned that under the terms of §§ 628.46 and 807.01(4), a judgment is "paid" when an offer of settlement is made. *Upthegrove*, 152 Wis. 2d at 13–14. Thus, § 628.46, which awards interest only until an untimely claim is paid, is tolled when an offer of settlement is made. *Id.*

¶ 76. While one ordinarily thinks of a claim being "paid" when a check or cash is received, once one accepts that a claim is paid when an offer of settlement is made, it is apparent that WIS. STAT. § 628.46 interest runs from the time a claim becomes delinquent until an offer of settlement is made. The claim is then "paid," and WIS. STAT. § 807.01 interest begins.

¶ 77. The reasoning of *Upthegrove* shows why it is inapplicable here. Whether two statutes interact to prevent stacking interest is a conceptually different analysis than determining whether contractual interest is voided by WIS. STAT. § 807.01(4), or vice-versa. Equating an insurance statute with a contract between two corporations makes no sense. The two have nothing in common with each other.

¶ 78. Contracts enjoy constitutional protection, though that protection is not absolute. WISCONSIN CONST., art. I, sec. 12. The majority has not impaired DeWitt's contract with the Companies, though it considers that possibility. But it has repealed WIS. STAT. § 807.01(4) when the litigation arises out of a contract with a provision for interest on delinquent payments.

This is a significant repeal, as "Delinquent payments will accrue interest at 18% interest" is a common sentence found on contracts and invoices.

¶ 79. There is another interesting artifact in *Erickson* and *Upthegrove*. The majority feels bound by their analyses, and attempts to follow them. But when the logic of those cases leads to the result of DeWitt receiving eighteen percent interest until it made its offer of settlement, and twelve percent interest thereafter, the majority balks. Instead of questioning the analysis requiring this result, the majority enacts a third rule that accepts *Erickson*'s and *Upthegrove*'s analyses for one purpose and rejects them for another. And when a contract calling for ten percent interest on a delinquent account arrives at this court, a third analysis will have to be invented. Interpreting the statute and contract according to their plain meanings would have been much easier.

¶ 80. This need not have been. *Upthegrove* and *Erickson* do not involve stacking contract interest on WIS. STAT. § 807.01(4) interest. The analysis used in those cases must differ from today's analysis because there, the conflict was between two statutes (*Upthegrove*) and a statute and the common law (*Erickson*). Cases in which we analyze the interaction of two statutes are common, and we often determine the legislative intent behind those statutes. Likewise, the interaction between a statute and various common law principles constitutes a significant part of our jurisprudence.

¶ 81. Here, the question is whether an admittedly valid contract provision and an admittedly valid statute can both serve their proper purposes. There is no reason why a creditor cannot require a debtor to pay interest on a delinquent account and still avoid trial

delay by using WIS. STAT. § 807.01(4), a statute designed for that purpose. There is no reason why a debtor faced with paying interest on a delinquent account should be immunized from paying a penalty for delay. There is no reason why pretrial settlements in these cases should be discouraged. Were I writing for a majority, I would permit Dewitt to receive the interest that its contract contemplated and the penalty that § 807.01(4) extracts for delay and unreasonable refusal to settle a case before trial. That is why I respectfully dissent.