Vogt, Respondent, vs. Calvary Lutheran University Missionary Society, Appellant.

*November 10—December 5, 1933.*

For the appellant there was a brief by *H. F. Lichtsinn*, attorney, and *Ernst von Briesen* of counsel, both of Milwaukee, and oral argument by *Mr. von Briesen*.

*O. A. Stolen* of Madison, for the respondent.

FRITZ, J.   The complaint does not adequately state the facts or clearly indicate the theory upon which, upon the trial, the court ultimately held that the plaintiff was entitled to recover from the defendant on an undertaking which the latter gave to plaintiff on September 3, 1925.   The essential facts and legal consequences which support the court's findings and conclusions of law, and the judgment, from which defendant appealed, are as follows:

In March, 1922, George Ellman, who then had a second mortgage on land subsequently acquired by the defendant, paid interest which was over due on a loan secured by a first mortgage on that land.   He advanced that interest under an agreement with the holder of the first mortgage that, if on the foreclosure thereof sufficient was realized to pay the amount due including such interest advanced by Ellman, he would be repaid.   In October, 1923, Ellman advanced the money for another payment of interest which had accrued

on the first-mortgage loan. He was not liable for that interest and did not make such payments as an intermeddler or mere volunteer, but solely to protect his own interest in the land by virtue of his second mortgage. Others who had made that first-mortgage loan or who assumed it on acquiring the equity were liable, and they would be benefited by Ellman's payments of that interest if the property were entirely relieved from the lien therefor which was afforded by the first mortgage. Consequently, equity immediately operated in favor of Ellman by preserving such lien claim to him. Upon his advancing that interest he became subrogated to the extent of his advances to the lien of the first mortgage, with the same right to enforce it as the first mortgagee possessed, so that Ellman should not suffer loss, to the gain of those who, although in default, would otherwise derive the benefit of his payment. *Charmley v. Charmley,* 125 Wis. 297, 103 N. W. 1106; *Tellett v. Albregtson,* 160 Wis. 487, 152 N. W. 152.

Meanwhile, on March 16, 1922, Ellman had commenced an action to foreclose his second mortgage and, in connection with that action, a *lis pendens* was duly filed on April 18, 1922. In that action judgment was duly entered for the amount due on the loan secured by that second mortgage, and the foreclosure sale was noticed for August 3, 1923. To procure a postponement of that sale, Vera Vogt, the plaintiff in the action now at bar, who then held a lien by virtue of a judgment against E. C. Vogt on his vendee's interest in the land under a land contract, advanced $2,800, which were applied as a payment to Ellman on account of his foreclosure judgment. However, on November 23, 1923, at a sheriff's sale pursuant to the Ellman's judgment of foreclosure, the property was sold to Vera Vogt for $39,555, under the expressed condition that the sale was subject to the first mortgage of $30,000 with interest from August 12, 1923, and also the subrogated interest paid by

Ellman of $2,315.32, and the 1922 taxes. Vera Vogt then paid down $1,500, and on December 17, 1923, that sale was confirmed by the court.

On January 16, 1924, Vera Vogt and George J. Weigle entered into a contract under which Weigle agreed to deposit into court the unpaid balance of her bid at the sheriff's sale, and she agreed to convey to him all of the interest which she had in the property as the purchaser at the sheriff's sale, and as the wife and a judgment creditor of E. C. Vogt. That contract also provided that she had an option to repurchase a portion of the land at specified prices within certain periods, and that if she failed to pay the specified amount before the expiration of such periods, she was to have "no right in and to said property either by virtue of this option or otherwise." In respect to those provisions it. must be noted that, as Vera Vogt, when she executed that contract, and pursuant thereto a quitclaim deed, to Weigle, on January 16, 1924, did not have any interest in Ellman's claim and right to subrogation, and it was not then even contemplated that she would thereafter acquire that claim and right, there is no basis for holding that her quitclaim deed was intended to convey anything more than the particular interests which were enumerated in that contract and which, as enumerated, did not include Ellman's claim and right, or any interest subsequently acquired or vesting in her. For the same reason there is no basis for holding that the word "otherwise" in the provision in that contract that, if Vera Vogt did not exercise her option, she was to have no right "by virtue of this option or *otherwise*" in the property, was intended to deprive her of such an after-acquired right. That contract of January 16, 1924, further provided that, if out of the moneys deposited in court, payment is made to Ellman, as reimbursement for moneys advanced by him for interest on the first-mortgage loan, so that (quoting) "the indebtedness of George J. Weigle on the first

mortgage or on the land" is thereby decreased, then a deduction "to the extent of the payment so made" was to be made in the purchase price which was to be paid by Vera Vogt, if she elected to purchase under her option. Those provisions are very significant. They disclose that Weigle was fully aware of the fact that Ellman was to be reimbursed for interest which he had advanced on account of the first mortgage; that Ellman's claim for reimbursement was considered the indebtedness of George J. Weigle on the first mortgage or on the land; and that, if the claim was not satisfied out of the money deposited in payment of the bid on the foreclosure sale, Ellman's claim constituted "indebtedness of Weigle on the first mortgage or on the land."

Upon plaintiff's delivery of her quitclaim deed to Weigle on January 16, 1924, he deposited in court the balance to be paid on her bid, and on January 21, 1924, the court, in that foreclosure action, ordered that there be paid to Ellman, out of that deposit, the amount of his judgment, less the $2,800 theretofore advanced by Vera Vogt to pay to him on that judgment. Weigle conveyed the premises to defendant on April 26, 1924.

On May 6, 1924, in further proceedings in that foreclosure action, the court made findings of fact and conclusions of law in relation to the final distribution of the surplus of the proceeds of the foreclosure sale, and the final judgment was entered on May 8, 1924. In and by those findings, conclusions, and judgment, the court then adjudicated that the amounts advanced by Ellman for interest on the first-mortgage loan had not been included in the judgment of foreclosure on his second mortgage and that no part thereof had been paid to him; and that such advances, amounting in the aggregate to $2,370.12, were to be paid to him "by the purchaser, Vera Vogt, out of the funds in the hands of the clerk of this court; provided, however, that upon payment thereof the said Vera Vogt be subrogated to all rights

of said George Ellman in and to the payment of said sum of money, nothing herein contained to be deemed to release any claim that the plaintiff, George Ellman, had by virtue of having made the advances of interest upon the first mortgage." It is apparent from those provisions that Ellman's claim for those advances was not included in the judgment which he recovered in that foreclosure action; that his right to reimbursement and subrogation was expressly and duly preserved in the course of the proceedings in that action; and that those provisions were intended to and did preserve for Vera Vogt, Ellman's right to repayment and subrogation for those advances. Consequently, upon the application by the court, in those foreclosure proceedings on May 8, 1924, of $2,370.12 belonging to her, to reimburse Ellman, she then became subrogated to Ellman's rights by reason of those advances, including his lien under the first mortgage. Weigle and the defendant, as purchasers, subsequent to the filing of the *lis pendens* in that foreclosure action, are bound and concluded by the proceedings and judgment in that action, whether taken or entered before or after they acquired title, to the same extent and in the same manner as if they had been joined and served as parties thereto. Sec. 281.03 (1), Stats.; *Newton v. Marshall,* 62 Wis. 8, 21 N. W. 803; *Brown v. Griswold,* 109 Wis. 275, 85 N. W. 363.

In September, 1925, the defendant agreed to procure a release of the first mortgage in connection with the sale of a portion of the land to a purchaser who questioned the title because of what the records disclosed in relation to the subrogation of Vera Vogt to Ellman's rights under the first mortgage. Thereupon the defendant delivered to plaintiff the undertaking in the sum of $2,500, upon which the judgment in this action is based. In that undertaking it is recited that Vera Vogt claims to have $2,370.12 coming to her as a subrogated interest by virtue of the judgment in the Ell-

man's foreclosure action; that the Calvary Lutheran University Missionary Society denies that claim; and that Vera Vogt, without prejudice, however, to her rights because of her failure to so object, has agreed not to object to satisfaction of the first mortgage, and to consent to release that mortgage in consideration of the undertaking. In that undertaking it was provided:

"Now if the said Vera Vogt shall be found to be entitled to said sum of twenty-three hundred seventy and 12-100 ($2,370.12) dollars or any part thereof from the said above named principal, or if a lien against the above described property either by virtue of the judgment of May 14th, 1924, or by any subsequent judgment, then this obligation shall be and remain in full force and virtue, otherwise this obligation shall be void."

On trial of this action the court concluded that Ellman upon advancing the interest "became equitably entitled to a lien on the land" described in the first mortgage, and that upon the payment by Vera Vogt of the sum of $2,370.12 to Ellman on May 8, 1924, in accordance with the judgment of the court having jurisdiction of that foreclosure action, she "became subrogated to the said lien rights of said George Ellman." Upon those conclusions, judgment was entered for the recovery by plaintiff of $2,370.12 and interest from May 8, 1924, from the defendant; and the latter appealed from that judgment.

Although the contract of January 16, 1924, between Vera Vogt and Weigle discloses that Weigle then knew of Ellman's claims for reimbursement for his advances for interest on the first-mortgage loan, and that those claims were included in "the indebtedness of Weigle on the first mortgage or on the lands," it also discloses that there was then some uncertainty as to whether or not those advances would be paid out of the proceeds of the foreclosure sale, which Weigle was to deposit in court. However, there was no such uncertainty from and after May 8, 1924, when, in that

foreclosure action, it was adjudged in the final judgment—of which the defendant had notice and by which it was bound by virtue of the *lis pendens*—that Ellman was to be reimbursed out of Vera Vogt's $2,800 interest in the proceeds of that foreclosure sale for his advances for interest on the first-mortgage loan; that Vera Vogt was subrogated to Ellman's right to reimbursement for such advances; and that nothing contained in that judgment was to be deemed to release any right that Ellman had by virtue of having made those advances. That judgment clearly recognized and preserved in Vera Vogt, Ellman's right to the lien afforded by the first mortgage for his interest advances, and warranted the conclusion by the trial court in this action that upon payment to Ellman, in accordance with that judgment, of $2,370.12, which belonged to Vera Vogt, she "became subrogated to said lien rights of said George Ellman."

Consequently, within the terms and provisions of the undertaking, she has been found to be entitled to a lien on the property described in the undertaking, by virtue of the judgment of May 8, 1924. That is the judgment which is described in the undertaking, in so far as the court and parties mentioned are concerned, although there is a manifest clerical error in describing the judgment as dated on or about the 14th day of May, 1924, instead of the 8th day of that month. Likewise, it is apparent that there is another clerical error in the use of the word "if" in the clause "or *if* a lien against the above described property," etc. With the word "if" in that clause, which appears in the foregoing quotation from the undertaking, the language is confusing and insensible, but it becomes complete and intelligible upon omitting that word "if" from where it appears in that clause. Under the circumstances that clerical error is so palpable that the word may be rejected as surplusage. 9 Cyc. 585; 13 Corp. Jur. p. 538, § 504; *Decorah v. Kesselmeier,* 45 Iowa, 166; *Harney v. Wirtz,* 30 N. Dak. 292, 152 N. W.

803; *Way v. Greer,* 196 Mass. 237, 81 N. E. 1002; *Tucker v. Meeks,* 52 N. Y. 638, 32 N. Y. Supp. 736.

We find no error in relation to the judgment appealed from excepting in so far as it was thereby adjudicated that under the undertaking the plaintiff was entitled to recover interest on the sum of $2,370.12 from May 8, 1924, the date of the final judgment in the foreclosure proceeding. The established rule is that when the time of payment is specified by the terms of a contract, then interest is to be computed from the time that payment was due by those terms. *Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316, 329, 335, 237 N. W. 277, 240 N. W. 405.

The agreement between Vera Vogt and the defendant which is evidenced by the undertaking of September 3, 1925, was that the defendant's obligation by virtue of that undertaking was to be and remain in full force if Vera Vogt "shall be found" to be entitled to all or part of the sum of $2,370.12 from the defendant or a lien against the property. That verb "shall be found" is in the future tense and signifies that the liability under the undertaking was not to become absolute until a finding to that effect was made at some time in the future. That did not occur until the findings herein were signed on November 11, 1932, and consequently that day is the time from which the interest which plaintiff is entitled to recover is to be computed. As the undertaking was executed on September 3, 1925, and this action thereon was commenced within six years of that date, it is neither barred by the statute of limitations nor by laches.

*By the Court.*—Judgment modified by reducing the amount for which plaintiff is entitled to judgment to $2,370.12 with interest from November 11, 1932, and costs; and as modified that judgment is affirmed.