DeWitt Ross & Stevens, S.C., Plaintiff-
Respondent-Cross-Appellant-Petitioner,

v.

Galaxy Gaming and Racing Limited Partnership,
and Galaxy Casinos, Inc., Defendants-Co-
Appellants-Cross-Respondents-Cross Petitioners,

Southwest Florida Enterprises, Inc., Defendant-
Appellant-Cross-Respondent-Cross Petitioner.

Supreme Court

*No. 02–0359. Oral argument April 8, 2004.—Decided
July 1, 2004.*

2004 WI 92

(Also reported in 682 N.W.2d 839.)

579

ABRAHAMSON, C.J. concurs in part, dissents in part (opinion filed).

CROOKS, J., dissents in part, concurs in part (opinion filed).

SYKES, J., joins dissent/concurrence.

WILCOX and PROSSER, J.J., took no part.

For the plaintiff-respondent-cross-appellant-petitioner there were briefs by *Anthony R. Varda* and *DeWitt Ross & Stevens, S.C.*, Madison, and oral argument by *Anthony R. Varda*.

For the defendants-co-appellants-cross-respondents-cross petitioners there were briefs by *Robert H. Friebert, S. Todd Farris, Jennifer L. Bolger* and *Friebert, Finerty & St. John, S.C.*, Milwaukee, and oral argument by *Robert H. Friebert*.

¶ 1. ANN WALSH BRADLEY, J. This case arises out of a dispute over the collection of a legal bill. The petitioner, DeWitt Ross & Stevens, S.C., seeks review of a published decision of the court of appeals that affirmed in part and reversed in part a judgment of the circuit court.[1] DeWitt asserts that the court of appeals

---

[1] *Dewitt v. Galaxy Gaming*, 2003 WI App 190, 267 Wis. 2d 233, 670 N.W.2d 74 (affirming in part and reversing in part a decision of the circuit court for Dane County, Maryann Sumi, Judge).

erred in denying it an award of prejudgment interest under the offer of settlement statutes, Wis. Stat. § 807.01(3) and 807.01(4).[2]

¶ 2. Cross-petitioners Galaxy Gaming and Racing L.P., Galaxy Casinos, Inc., and Southwest Florida Enterprises, Inc. also seek review of the court of appeals' decision. They assert that the court erred in ruling that DeWitt made a valid Wis. Stat. § 807.01(3) offer of settlement. Additionally, they contend that the court erred in concluding that Southwest's guaranty on behalf of Galaxy included a guarantee to pay interest due on the outstanding account, that DeWitt could charge interest retroactive to January 1, 1997, and that DeWitt could recover as statutory costs the expense of having both a videographer and a court reporter record the same deposition.

¶ 3. We conclude that DeWitt did not make a valid Wis. Stat. § 807.01(3) offer of settlement.[3] We also conclude that the court of appeals properly determined that Southwest's guaranty on behalf of Galaxy included a guarantee to pay interest, that DeWitt could charge interest retroactive to January 1, 1997, and that DeWitt could recover as statutory costs the expenses of both its videographer and court reporter. Accordingly, we affirm in part, reverse in part, and remand the cause to the circuit court.

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[3] DeWitt argues that the statutory 12 percent prejudgment interest is mandatory under Wis. Stat. § 807.01(4) and that the court of appeals erred by declining to stack it on top of the contractual 18 percent interest specified in DeWitt's retainer agreement. Because we determine that DeWitt did not make a valid Wis. Stat. § 807.01(3) offer of settlement, we need not address this issue.

## I

¶ 4. For over five years, the law firm of DeWitt Ross & Stevens, S.C. (hereinafter "DeWitt") provided legal services to Galaxy Gaming & Racing L.P. and Galaxy Casinos, Inc. (hereinafter collectively referred to as "Galaxy Partnership"). The legal services were rendered in connection with Galaxy Partnership's litigation with the City of Hudson.

¶ 5. Galaxy Partnership sought to obtain approval for an Indian casino at the St. Croix Meadows dog track in Hudson. As part of this effort, Galaxy Partnership negotiated an agreement with the City for governmental services. While Galaxy Partnership's application was awaiting final approval from the federal government, the City communicated with the government, indicating that it opposed the proposed casino. In the federal government's decision denying approval of the casino, it cited the City's opposition as a factor. Galaxy Partnership considered the City's opposition a breach of the agreement and retained DeWitt to represent it.

¶ 6. Fred Havenick, president of Galaxy Partnership, signed a retainer letter with DeWitt.[4] The letter provided that DeWitt would bill Galaxy Partnership on a monthly basis for services rendered and expenses incurred. It also indicated that the monthly statement would be payable upon receipt. Finally, the letter stated that DeWitt "reserve[d] the right to charge interest at the rate of 18% per annum (1 1/2% per month) on all statements not paid within 20 days after their date."

---

[4] We note that Fred Havenick was actually the president of Galaxy Casinos, not Galaxy Gaming. However, Galaxy Casinos is the general partner of Galaxy Gaming. Thus, for ease of reference, this opinion will refer to Havenick as president of Galaxy Partnership.

¶ 7. Because Galaxy Partnership had no assets or means of earning income, the letter required payment of either a cash retainer in the amount of $25,000 or a guaranty of payment. Galaxy Partnership chose the latter option. Havenick, the president of Galaxy Partnership, was also the president of Southwest Florida Enterprises, Inc. (hereinafter "Southwest"). The guaranty was executed by Southwest, which wholly owned Galaxy Casinos, the general partner of Galaxy Gaming (we will periodically refer to all three entities as simply "the Companies").

¶ 8. In his capacity as president of Southwest, Havenick signed the following guaranty, which was numbered page four of the retainer letter and executed simultaneously with it:

> The undersigned, for valuable consideration and the willingness of . . . DeWitt, Ross & Stevens, S.C. to represent [Galaxy] Partnership, all of which inures to my benefit, hereby personally guaranties the timely and full payment of all statements for services rendered and disbursements/expenses incurred on behalf of [Galaxy] Partnership. In the event of a failure of [Galaxy] Partnership to pay the monthly statements as they fall due, the undersigned agrees that the law firm[] may, in the first instance, look to the undersigned for payment without having to exercise or exhaust any remedies against [Galaxy] Partnership.

¶ 9. As legal services were provided, monthly statements were routinely submitted to Havenick. However, Galaxy Partnership did not stay current with its payments. By November 24, 1997, its unpaid bills totaled over $129,000. DeWitt wrote Havenick, demanding payment in full of Galaxy Partnership's entire obligation by December 1, 1997. In doing so, it alerted

him that if payment were not timely made, DeWitt would charge the contractual 18 percent interest on the balance.

¶ 10. Shortly after December 1, 1997, Galaxy Partnership made a $50,000 payment to DeWitt. DeWitt responded to the payment by sending Havenick a letter dated December 8, 1997, in which it demanded payment of retroactive interest computed from January 1, 1997.[5] At the time, Havenick did not object to the interest payment provision in the letter.

¶ 11. Over the next two years, Galaxy Partnership continued to make occasional payments to DeWitt. In those months when payment was made, DeWitt provided a payment application summary, indicating that the payments were applied first to accrued interest, then to principal. Again, Havenick did not object.

¶ 12. DeWitt submitted its final bill to Havenick at the conclusion of Galaxy Partnership's litigation with the City. The bill showed a total balance of $352,172.59, including $69,209.44 of accrued interest. When payment was not forthcoming, DeWitt sued the Companies to enforce the retainer letter and guaranty, claiming $396,847.86, which included interest through April 1, 2001.

¶ 13. On July 9, 2001, DeWitt made an offer of settlement pursuant to Wis. Stat. § 807.01(3). The offer required payment of $370,000 in full to be made within 15 days of acceptance. It stated:

> Plaintiff DeWitt Ross & Stevens, S.C. hereby offers to settle and release all claims in the above-captioned matter, including claims for costs, sanctions, attorneys fees and interest for payment to it from any of the

---

[5] It is unclear from the record why DeWitt chose January 1, 1997 rather than some earlier date.

above-named Defendants, or any combination of the above-named Defendants, in the amount of $370,000 to be made within 15 days of acceptance of this offer. This offer shall expire within 10 days of this date, pursuant to Wis. Stat. § 807.01, and will not hereinafter be renewed.

¶ 14. After the offer was rejected, DeWitt moved for summary judgment on the question of Southwest's liability under the guaranty for principal and interest due. The circuit court determined that Southwest's obligation under the guaranty included payment of the contractual 18 percent interest. It also concluded that DeWitt was entitled to recover interest on the unpaid balance from December 1, 1997, the date DeWitt informed the Companies that it would begin assessing interest.

¶ 15. The circuit court entered judgment against the Companies in the amount of $407,498.79, awarding double costs pursuant to Wis. Stat. § 807.01(3). Although it concluded that the settlement offer was valid, the court declined to stack the statutory 12 percent prejudgment interest on top of the contractual 18 percent interest that DeWitt was entitled to receive. The court also declined to award costs for a transcript of Havenick's videotaped deposition. The Companies appealed and DeWitt cross-appealed.

¶ 16. The court of appeals affirmed in part and reversed in part the decision of the circuit court. *DeWitt v. Galaxy Gaming*, 2003 WI App 190, 267 Wis. 2d 233, 670 N.W.2d 74. Like the circuit court, it held that Southwest was liable for the contractual 18 percent interest, that DeWitt was entitled to double costs, and that DeWitt's offer of settlement was valid. *Id.*, ¶¶ 4, 29. In discussing whether a Wis. Stat. § 807.01(3) offer of settlement may contain a 15–day payment condition,

the court of appeals crafted a "reasonableness" test. *Id.,* ¶ 31. It determined that a Wis. Stat. § 807.01(3) offer of settlement could contain such a condition provided that it was reasonable. *Id.*

¶ 17. In addition, the court of appeals agreed with the circuit court that Dewitt could not stack the statutory 12 percent prejudgment interest on top of its contractual 18 percent interest. *Id.,* ¶ 63. The court determined the effective rate of interest in this case to be 35.9 percent had DeWitt prevailed. *Id.,* ¶ 56, n. 8. It voiced concern that when faced with the prospect of incurring such interest, offerees might believe they have no choice but to capitulate. *Id.,* ¶ 65. The court further determined that interest under the contract began to accrue on January 1, 1997, not December 1, 1997. *Id.,* ¶ 4. Finally, it concluded that the circuit court erroneously excluded the deposition transcript as an item of costs. *Id.*

II

¶ 18. We review summary judgment decisions applying the same methodology as does the circuit court. *Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶ 21, 241 Wis. 2d 804, 623 N.W.2d 751. In order to be entitled to summary judgment, the moving party must prove that no genuine issue exists as to any material fact and that it is entitled to judgment as a matter of law. *Id.,* ¶ 24.

¶ 19. Whether a settlement offer is valid for purposes of statutory prejudgment interest involves interpretation and application of Wis. Stat. § 807.01(3). This presents a question of law subject to independent

587

appellate review. *Meyer v. Sch. Dist. of Colby,* 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

■

¶ 20. In reviewing the scope of a guaranty and determining when payment of interest is due, we must interpret a contract. This too presents a question of law, subject to independent appellate review. *See N. States Power Co. v. Nat'l Gas Co.,* 2000 WI App 30, ¶ 7, 232 Wis. 2d 541, 606 N.W.2d 613.

■

¶ 21. Finally, whether a stenographic transcript of a videotaped deposition is a necessary cost that should be awarded to a prevailing plaintiff is a matter within the circuit court's discretion. We will uphold the circuit court's exercise of discretion, provided that it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach. *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 224 Wis. 2d 312, 330, 592 N.W.2d 279 (Ct. App. 1998).

### III

¶ 22. This case presents us with several issues. We address first the validity of DeWitt's offer of settlement under Wis. Stat. § 807.01(3). Next, we turn to questions pertaining to the interest due, that is, whether Southwest's guaranty included a guarantee to pay interest and whether DeWitt could charge interest retroactive to January 1, 1997. Finally, we consider whether DeWitt could recover as statutory costs the expense of having both a videographer and a court reporter record the same deposition.

¶ 23. Our discussion begins by examining the validity of DeWitt's statutory offer of settlement. The

Companies contend that the offer was not valid because in addition to a request for a sum of money (including costs), it contained a condition requiring payment within 15 days of acceptance.[6]

¶ 24. Wisconsin Stat. § 807.01, entitled "Settlement offers," creates certain statutory consequences for pretrial settlement negotiations between litigants. If a party makes an offer that conforms to section 807.01, that offer is rejected, and the offeror recovers a more favorable judgment, then costs may be shifted or doubled, and prejudgment interest may be imposed.

¶ 25. The relevant statutory scheme is set forth in three subparagraphs. Wisconsin Stat. § 807.01(1) governs offers by the defendant to allow the plaintiff to take judgment against the defendant in the amount specified. It provides:

> After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. If the plaintiff accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the plaintiff may file the offer, with proof of service of the notice of acceptance, and the clerk must thereupon enter judgment accordingly. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of judgment is not accepted and the

---

[6] In the alternative, the Companies maintain that Wis. Stat. § 807.01 is violative of due process because they are unable to ascertain whether or not a given offer will subject them to double costs and prejudgment interest. Because we determine that a settlement offer that contains a condition of a deadline for payment does not entitle the plaintiff to the relief specified in Wis. Stat. § 807.01, we do not reach the Companies' due process argument.

plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint.

¶ 26. Wisconsin Stat. § 807.01(3) governs offers of settlement from the plaintiff to the defendant. It provides:

After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

¶ 27. Wisconsin Stat. § 807.01(4) provides for the imposition of prejudgment interest:

If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under sections 814.04(4) and 815.05(8).

¶ 28. The statutory offer of judgment, now numbered Wis. Stat. § 807.01(1), has been available to Wisconsin defendants since 1858, with very little change in its language during the interceding century

and a half. *See* 1858 Wis. Laws 114 (Chapter 97, published May 21, 1858). It governs offers by the defendant to allow the plaintiff to take judgment against the defendant in the amount specified.

¶ 29. In 1971, Wis. Stat. § 807.01(3), the statute at issue in this case, was introduced by Assembly Bill 52, published May 7, 1971.[7] The drafting request indicates that it was created to be a mirror image of the statute now numbered Wis. Stat. § 807.01(1).[8]

¶ 30. At common law, parties were required to bear their own costs.[9] Wisconsin Stat. § 807.01 is a cost-shifting statute and therefore is a statute in derogation of the common law. Statutes in derogation of the common law must be strictly construed. *See, e.g., Hoffmann v. Wis. Elec. Power Co.,* 2003 WI 64, ¶ 13, 262 Wis. 2d 264, 664 N.W.2d 55; *Wis. Bridge & Iron Co. v. Indus. Comm'n,* 233 Wis. 467, 474, 290 N.W. 199 (1940); *Meek v. Pierce,* 19 Wis. 300, 303 (1865).

¶ 31. Consequently, Wisconsin courts have construed the statute very strictly. For example, in *Nicholson v. Home Ins. Cos., Inc.,* the court strictly construed the first four words of the section, "after issue is joined." 137 Wis. 2d 581, 606, 405 N.W.2d 327 (1987). An offer

---

[7] The statute was then numbered Wis. Stat. § 269.02(3).

[8] Drafting Records of Assembly Bill 52, LRB 611. "Have *plaintiff* offer of settlement. If made & refused, & Pl recovers, Pl t rcv *double* dams. (Reverse of 269.02(1) Settle in 10 days after receipt of offer. (Use subsection titles here.)" (Punctuation, abbreviation, and emphasis as contained in the original document).

[9] *Wisconsin Dep't of Transp. v. Wis. Personnel Comm'n,* 176 Wis. 2d 731, 736, 500 N.W.2d 664 (1993) (citing *Noyes v. State,* 46 Wis. 250, 251–52, 1 N.W. 1 (1879) ("At the common law, costs were unknown. Costs are altogether the creature of statute.")).

made prior to the commencement of the action was determined to be invalid. *Id.* at 606–07. Likewise, an offer made after both parties stipulated to entry of a stay in an arbitration was invalid, because it did not take place during the pendency of an action and therefore was not "after issue [was] joined." *Briggs v. Farmers Ins. Exchange,* 2000 WI App 40, ¶ 17, 233 Wis. 2d 163, 607 N.W.2d 670.

¶ 32. The remainder of the statutory language has been similarly strictly construed. As indicated in the statute, and reiterated by this court, an offer must be written. *Nicholson,* 137 Wis. 2d at 606. It must be served upon the defendant. In *Tullgren v. Karger,* we explained that this requirement could not be satisfied by an offer contained in the answer. 173 Wis. 288, 295, 181 N.W. 232 (1921).

¶ 33. If the offer is not accepted within the limited time period, it must be withdrawn from all consideration of the court and cannot be used in evidence in any way, nor can it be subsequently accepted. *Id.* Double costs and interest may not be imposed unless an actual judgment is entered in a case. *Osman v. Phipps,* 2002 WI App 170, ¶ 12, 256 Wis. 2d 589, 649 N.W.2d 701.

¶ 34. Additionally, we have further circumscribed offers of settlement. They must be absolutely unambiguous. *Stan's Lumber, Inc. v. Fleming,* 196 Wis. 2d 554, 576, 538 N.W.2d 849 (Ct. App. 1995). This court has approved a simple standard for assessing whether or not an offer under Wis. Stat. § 807.01 is unambiguous: the offer must allow the defendant to fully and fairly evaluate his or her own exposure to liability. *Prosser v. Leuck,* 225 Wis. 2d 126, 137, 592 N.W.2d 178

(1999).[10] Offers made to multiple defendants or by multiple plaintiffs have, in some instances, been determined to be ambiguous. *See, e.g., D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 341–42, 475 N.W.2d 587 (Ct. App. 1991); *DeMars v. LaPour*, 123 Wis. 2d 366, 374–75, 366 N.W.2d 891 (1985).

¶ 35. In accord with this court's precedent strictly construing Wis. Stat. § 807.01, we look to the language of the statute to interpret and apply its express provisions. Here, the language of § 807.01(3) allows an offer of settlement to seek three categories of relief. The text provides: "the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs." In other words, the plaintiff's offer may demand payment of a sum of money, the transfer of property, or other specified relief sought in the action.[11]

---

[10] *Prosser* cites to *Testa v. Farmers Ins. Exchange*, 164 Wis. 2d 296, 302, 474 N.W.2d 776 (Ct. App. 1991) ("As can be seen from these cases, the appellate courts have developed a standard to determine the validity of an offer of settlement or offer of judgment for purposes of invoking the double costs and interest provisions of sec. 807.01, Stats., namely, in order for the offer to be effective, the offeree must be able to fully and fairly evaluate the offer from his own independent perspective."). *Prosser v. Leuck*, 225 Wis. 2d 126, 137, 592 N.W.2d 178 (1999). In *Prosser*, the plaintiff offered to settle "in exchange for the defendant's payment" of $99,750 "cash, plus the actual costs of this action." No objection was raised to the plaintiff actually requiring payment to settle the case.

[11] This court has not previously discussed the nature of the other specified relief. It applies to offers of settlement in cases where some component of the relief sought is other than money or property.

FRCP 68 is the Federal Rules' equivalent of Wis. Stat. § 807.01(1), and is descended from the same New York statute

¶ 36. We note that there is nothing in the language of Wis. Stat. § 807.01 that authorizes conditions on payment like the 15–day payment provision here. Therefore, in strictly construing the express terms of the section, we determine that the condition may not be imposed.

¶ 37. This determination is consistent with the statutory scheme. Wisconsin Stat. § 807.01(3) provides in part: "If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of taxable costs." The payment condition set forth in the DeWitt offer of settlement was "payment . . . to be made within 15 days of acceptance of this offer." Because a judge could not enter a judgment ordering payment within 15 days, DeWitt is unable to meet the Wis. Stat. § 807.01(3) requirement of obtaining a "more favorable judgment."

¶ 38. This court has previously noted that "the purpose of Wis. Stat. § 807.01 is to encourage settlement and accordingly, secure just, speedy and inexpensive determinations of disputes." *Prosser,* 225 Wis. 2d at 140. As befits a statute intended to expedite the reso-

---

from which 807.01 traces its lineage. Pursuant to Rule 68, a defendant may offer to allow a plaintiff to take judgment against it for "money or property or to the effect specified, with costs." Federal courts have construed the rule as encompassing offers to allow judgment for a wide variety of injunctive relief. *See, e.g., Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 442 (9th Cir. 1982) (demand that certain information not be disclosed); *Lightfoot v. Walker,* 619 F. Supp. 1481, 1485–86 (S.D.Ill. 1985) (demand for specific prison health care reform); *Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.,* 63 F.R.D. 607, 609 (E.D.N.Y. 1974) (demand for cessation of patent infringement).

lution of disputes, the language of Wis. Stat. § 807.01 reflects a concern with finality and ease of proof.

¶ 39. If Wis. Stat. § 807.01 is to fulfill its purpose, litigants must have clear guidance about the proper scope of a valid offer. A clear rule will help parties draft valid offers and assess their potential exposure to costs and prejudgment interest. Moreover, it will expedite dispute settlement by minimizing the need for post-trial litigation about rejected settlement offers. We further note that Wis. Stat. § 807.01(1) and 807.01(3) provide: "If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial . . ."; a clear rule is therefore uniquely appropriate here because the parties may not obtain a ruling on the validity of the offer during trial.

¶ 40. In the absence of a clear rule, adjudicated cases involving a Wis. Stat. § 807.01 offer may require additional post-trial collateral litigation. Payment within 15 days may be reasonable in one case but not in another, or reasonable to one defendant but not to another. If parties cannot know whether a given offer of settlement will be found valid without engaging in post-trial litigation, the statute will not encourage early and certain settlement.

¶ 41. For these reasons, we reject the court of appeals' proposed "reasonableness" standard for assessing the permissibility of conditions contained in statutory offers of settlement. As the Companies observed, settlement agreements often include terms such as payment schedules, confidentiality agreements, noncompete clauses, etc.[12] Requiring courts to review the reasonableness of such conditions would

---

[12] Our opinion today is not intended to chill these settlement conditions. Rather, it simply recognizes that the purpose

mire them in a dismal swamp of collateral litigation. Such a result would frustrate the purpose of the statute.

¶ 42. Accordingly, we conclude that the test for whether a given provision may be included in a valid settlement offer is not whether the provision is "reasonable," but rather whether the provision specifies a remedy that could be imposed by the court.[13] This test obviates any inquiry into reasonableness and also facilitates judicial comparison of the offer to the judgment eventually obtained at trial. In the case at bar, DeWitt demanded payment within 15 days of the offer. Because a judge could not enter a judgment requiring that the defendant tender payment within 15 days, we conclude that DeWitt's offer was not valid, and DeWitt is therefore not entitled to double costs and prejudgment interest.

IV

¶ 43. We turn next to questions pertaining to the interest due, beginning with whether Southwest's guaranty included a guarantee to pay interest. Southwest contends it did not, noting that the guaranty refers only

of Wis. Stat. § 807.01 would be frustrated by the collateral litigation that the "reasonableness" test would generate.

[13] The Companies argue that the imposition of any conditions on the offer of settlement renders it invalid under Wis. Stat. § 807.01. Although this position would appear to address the concerns we have outlined above, the Companies' argument is too simplistic. The statute authorizes settlement offers for property or equitable relief; it is in the nature of these types of relief that they are subject to a variety of conditions that may be imposed in the court's judgment. Because a court may impose such conditions in a judgment, they may validly be set out in the offer of settlement.

to "the timely and full payment of all statements for services rendered and disbursements/expenses incurred on behalf of the Partnership." DeWitt counters that the guarantee of "timely and full payment" unambiguously guarantees payment for interest charges. We conclude that the guaranty obligated Southwest for interest due on Galaxy Partnership's outstanding account.

¶ 44. A guaranty is a contract. *Klein-Dickert Oshkosh Inc. v. Frontier Mortgage Corp.,* 93 Wis. 2d 660, 668–69, 287 N.W.2d 742 (1980). "The ultimate aim of all contract interpretation is to ascertain the intent of the parties." *Eden Stone Co. v. Oakfield Stone Co.,* 166 Wis. 2d 105, 116, 479 N.W.2d 557 (Ct. App. 1991). Contracts must be read in such a manner as to give a reasonable meaning to each provision and without rendering any portion superfluous. *Isermann v. MBL Life Assurance Corp.,* 231 Wis. 2d 136, 153, 605 N.W.2d 210 (Ct. App. 1999).

¶ 45. In this case, the retainer letter provided that DeWitt's "[S]tatements are payable upon receipt. We reserve the right to charge interest at a rate of 18% per annum (1 1/2% per month) on all statements not paid within 20 days after their date." As noted in the retainer letter, Galaxy Partnership was without resources to pay legal fees. DeWitt therefore required that Southwest guarantee "timely and full payment of all statements for services rendered and disbursements/expenses incurred on behalf of [Galaxy Partnership]." The guaranty was numbered page four of the retainer letter and executed by Havenick simultaneously with the retainer.

¶ 46. Although Southwest guaranteed "timely and full payment," interest is admittedly not mentioned in the guaranty itself. Therefore, the agreement is ambiguous with respect to Southwest's obligation to pay

interest due on Galaxy Partnership's outstanding account. "In determining the [meaning of ambiguous contract language], this court has held that it is proper to consider the conduct of the parties and the negotiations which took place, both before and after the execution of the documents and to consider all related documents of the parties." *Smith v. Osborn,* 66 Wis. 2d 264, 272, 223 N.W.2d 913 (1974) (citations omitted).

¶ 47. Here, we are satisfied that the conduct of the parties evinced an intent that Southwest was liable for the consequences of untimely and deficient payments. If it were otherwise, Southwest's guarantee of "timely and full payments" would be rendered meaningless, as would the imposition of 18 percent interest on the partnership which had no assets. Accordingly, we conclude that Southwest guaranteed that it would pay DeWitt interest on Galaxy Partnership's outstanding account.

V

¶ 48. Having determined that Southwest's guaranty included interest, we consider next whether DeWitt could charge interest retroactive to January 1, 1997. The Companies assert that the court of appeals erred in awarding contract interest to DeWitt from January 1, 1997, the date from which DeWitt chose to impose interest on Galaxy Partnership's unpaid balance. Under their argument, DeWitt was not entitled to charge interest until it notified the Companies that it intended to exercise its right to interest under the contract. We reject the Companies' argument.

¶ 49. As noted above, the retainer letter executed by DeWitt and Havenick states in pertinent part: "You will receive a statement for services rendered and ex-

penses incurred on a monthly basis. The statements are payable upon receipt. We reserve the right to charge interest at the rate of 18% per annum (1 1/2 % per month) on all statements not paid within 20 days after their date." On November 24, 1997, DeWitt informed the Companies that "unless this account is paid off by December 1, 1997, we will apply the 18% interest rate provided for in [the] December 6, 1995, contract with you."

■

¶ 50. This court described the accepted practice with respect to accrual of interest in *Estreen v. Bluhm,* 79 Wis. 2d 142, 158–59, 255 N.W.2d 473 (1977). There, consistent with a series of earlier precedent,[14] this court held that the defendants were entitled to interest from the date on which the plaintiffs were supposed to pay their obligation under an agreement to purchase land. It explained:

> The general rule as to the time at which interest begins to run on a liquidated claim is that the creditor is entitled to interest from the time payment was due by the terms of the contract and, if no such time is

[14] *See, e.g., In re Oconto County State Bank,* 241 Wis. 369, 6 N.W.2d 353 (1942) ("The rule of course is that the debtor should pay interest from the time when he ought to have paid the debt."); *Vogt v. Calvary Lutheran Univ. Missionary Soc.,* 213 Wis. 380, 388, 251 N.W. 239 (1933) ("The established rule is that when the time of payment is specified by the terms of a contract, then interest is to be computed from the time that payment was due by those terms."); *Necedah Mfg. Co. v. Juneau County,* 206 Wis. 316, 329, 237 N.W. 277 (1931) ("[T]he creditor is entitled to interest . . . from the time payment or performance was due by the terms of the contract, or, if that was not specified, then from the time that demand was made, and if no demand was made prior to the time of the commencement of the action, then from that time.").

specified, then from the time a demand was made and, if no demand was made prior to the time of commencement of action, then from that time.

*Id.* Therefore, in order to determine the date from which the creditor is entitled to interest, we first examine the contract to ascertain whether it specifies a time at which performance or payment of the underlying debt is due.

¶ 51. Here, it is uncontested that the terms of the retainer letter required payment upon receipt of the monthly statements and specified that interest would accrue if payment was not received within twenty days. Applying the general rule of *Estreen,* we conclude that DeWitt acted within the terms of its agreement when seeking interest retroactive to January 1, 1997, because DeWitt was entitled to interest from the time the statements were payable (that is, upon receipt).

## VI

¶ 52. Finally, we examine whether DeWitt could recover as statutory costs the expense of having both a videographer and a court reporter record the same deposition. The Companies maintain that it cannot. Specifically, they contend that Wis. Stat. § 885.42(1) requires that a party arranging a simultaneous stenographic record do so at its own expense. That statute provides that "any deposition may be recorded by audiovisual videotape without a stenographic transcript. Any party to the action may arrange *at the party's expense* to have a simultaneous stenographic record made." Wis. Stat. § 885.42(1) (emphasis added).

¶ 53. Under Wis. Stat. § 814.01(1), a prevailing plaintiff is entitled to recover costs. Wisconsin Stat. § 814.04(2) authorizes imposition of costs for "all the

necessary disbursements . . . allowed by law." This includes "amounts actually paid out for certified copies of papers and records in any public office; postage, telegraphing, telephoning and express; depositions including copies . . . ." *Id.*

¶ 54. A circuit court may, in its discretion, determine that the requested item of cost was not a "necessary" disbursement, and deny a party costs on that basis. *See Aspen Servs., Inc. v. IT Corp.,* 220 Wis. 2d 491, 511, 583 N.W.2d 849 (Ct. App. 1998). We will uphold the circuit court's exercise of discretion, so long as it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach. *Mgmt. Computer,* 224 Wis. 2d at 330.

¶ 55. In this case, the circuit court allowed as costs the expense of Havenick's videotape deposition, but denied DeWitt's request to tax as costs the stenographic deposition transcript. Because the record before us does not contain a transcript of the motion hearing on costs, we do not know the exact rational process demonstrated by the circuit court. However, we surmise that it was persuaded by the Companies' argument that the text of Wis. Stat. § 885.42(1) precluded awarding the cost of obtaining a transcript of the deposition. This argument misses the mark.

¶ 56. The difficulty with the Companies' argument was aptly recognized by the court of appeals. It explained that, "Section 885.42(1) provides that the party wanting a copy of the deposition must pay for it. The statute does not address whether the deposition transcript or a copy of the videotape are taxable as costs." *DeWitt,* 267 Wis. 2d 233, ¶ 53. Accordingly, it looked to Wis. Stat. §§ 885.45 and 814.04(2) for guidance.

601

¶ 57. Section 885.45(2) states that "the reasonable expense of recording testimony on videotape shall be costs in the action." Subsections (3) and (6) allow the expenses associated with playing and editing the videotape, with the exception of a "videotape as a material," to be taxed as costs. Under subsection (4), the expense of an audio reproduction of the videotape sound track used by the court in ruling on objections shall be costs in the action.

¶ 58. Although Wis. Stat. § 885.45 does not contain a specific provision about transcription, Wis. Stat. § 814.04(2) allows an award of costs to the prevailing party for "depositions including copies." We agree with Dewitt that this case is not a situation where the transcripts were obtained solely for the convenience of counsel. *See J.F. Ahern Co. v. State Bldg. Comm'n,* 114 Wis. 2d 69, 109–10, 336 N.W.2d 679 (Ct. App. 1983). Rather, the deposition transcript was necessary for DeWitt's summary judgment motion because of the supporting papers requirement contained in Wis. Stat. § 802.08.[15] Accordingly, we determine that the circuit court erroneously exercised its discretion in denying DeWitt the cost of the deposition transcript.

---

[15] Wisconsin Stat. § 802.08(3) provides, in relevant part:

> Supporting Papers. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence. Copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith, if not already of record. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

## VII

¶ 59. In sum, we conclude that DeWitt did not make a valid Wis. Stat. § 807.01(3) offer of settlement. We also conclude that the court of appeals properly determined that Southwest's guaranty on behalf of Galaxy Partnership included a guarantee to pay interest, that DeWitt could charge interest retroactive to January 1, 1997, and that DeWitt could recover as statutory costs the expenses of both its videographer and court reporter. Accordingly, we affirm in part and reverse in part the decision of the court of appeals, and remand the cause to the circuit court for entry of judgment consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part and the cause is remanded to the circuit court for entry of judgment consistent with this opinion.

¶ 60. JON P. WILCOX, J. and DAVID T. PROSSER, J. did not participate.

¶ 61. SHIRLEY S. ABRAHAMSON, C.J. (concurring in part, dissenting in part). I agree with the majority on all issues (and join the majority opinion on all issues) except one. I would hold, as did the circuit court, that DeWitt was not entitled to charge interest on Galaxy's unpaid bills retroactively to January 1, 1997. I conclude that the retainer fee agreement permits DeWitt to charge interest only from November 27, 1997, the date that DeWitt notified Galaxy that it was exercising its contractual right to charge interest.

¶ 62. The court of appeals wrote that "[i]t is undisputed that the terms of the retainer letter . . . specified that interest would accrue if payment was not

603

received within twenty days of receipt [of the monthly statements]."[1] But the meaning of the words of the retainer letter is very much in dispute.

¶ 63. The retainer letter states, "We *reserve the right* to charge interest at the rate of 18% per annum (1½% per month) on all statements not paid within 20 days after their date" (emphasis added). Instead of giving a specific date from which interest would begin accruing, the retainer letter merely empowers DeWitt to begin charging interest at some future date to be determined. DeWitt sent monthly bills to Galaxy. None of these monthly bills charged interest or stated that interest was or would be charged, although payments were in arrears.

¶ 64. DeWitt announced to Galaxy its intention to charge interest in a letter dated November 24, 1997. Interest would be charged if payment in full were not received by December 1, 1997. The client made partial payment, and DeWitt responded to the partial payment by a letter dated December 8, 1997, in which it demanded payment of interest; a schedule attached to the letter calculated interest retroactively from January 1, 1997. This attached schedule reflected DeWitt's decision to seek collection of interest retroactively from January 1, 1997, an arbitrarily selected date unrelated to the retainer or to dealings between lawyer and client.

¶ 65. At oral argument, counsel for DeWitt explained that the provision in the retainer letter contract meant that interest would automatically accrue from the time payment was due, and that DeWitt reserved

---

[1] *DeWitt Ross & Stevens, S.C. v. Galaxy Gaming & Racing Ltd. P'ship,* 2003 WI App 190, ¶ 48, 267 Wis.2d 233, 670 N.W.2d 74.

the right to waive that interest. But reserving the right to *charge* interest is not the same as reserving the right to *waive* interest that is automatically imposed. If DeWitt wanted to reserve the right to waive interest that was automatically imposed, it should have stated so clearly in the retainer letter.

¶ 66. At best the retainer letter is ambiguous about interest. As a general rule, contractual ambiguities are construed against the drafter.[2] This rule of interpretation is especially appropriate in an arrangement for legal fees because the rules of professional conduct place an affirmative duty on an attorney to

---

[2] *Estreen v. Bluhm,* 79 Wis. 2d 142, 155, 255 N.W.2d 473 (1977) (citing *Moran v. Shern,* 60 Wis. 2d 39, 49, 208 N.W.2d 348 (1973)). *See also Dieter v. Chrysler Corp.,* 2000 WI 45, ¶ 15, 234 Wis. 2d 670, 610 N.W.2d 832.

Based on this general rule, the Restatement (Third) of the Law Governing Lawyers states the rule of interpretation of attorney-client fee contracts as follows: "[C]ontracts between clients and lawyers are to be construed from the standpoint of a reasonable person in the client's circumstances. The lawyer thus bears the burden of ensuring that the contract states any terms diverging from a reasonable client's expectations." Restatement (Third) of the Law Governing Lawyers § 18 cmt. h, at 159 (1998).

*See also Beatty v. NP Corp.,* 581 N.E.2d 1311, 1315 (Mass. App. Ct. 1991):

> As a general proposition, the meaning of a written document, if placed in doubt, is construed against the party that wrote it . . . and the principle surely counts double when the drafter is a lawyer writing on his or her own account to a client. In setting fees, lawyers "are fiduciaries who owe their clients greater duties than are owed under the general law of contracts." Restatement (Third) of the Law Governing Lawyers § 46, comment b (Tent. Draft No. 4, 1991).

communicate to the client the basis for any fees before or within a reasonable time after commencing the representation.[3] The majority opinion, condoning DeWitt's demand for retroactive interest, is not in keeping with either the spirit or the letter of the rules designed to ensure clear communication between an attorney and client regarding the fees.[4]

¶ 67. The majority opinion relies on *Estreen v. Bluhm*[5] and other cases for the proposition that the interest due to DeWitt should run from the time the liquidated amount was due.[6] However, neither *Estreen* nor the other cases cited involve a contract that includes a "reserve the right to charge interest" provision or a dispute over attorney's fees. *Estreen* and the other cases therefore add little, if anything, to the analysis of the retainer letter in the present case. The majority opinion's application of the "general rule of *Estreen*"[7] to this specialized contract provision and attorney-client fee agreements oversimplifies the matter at hand.

---

[3] *See* SCR 20:1.5(b) ("When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.").

*See* ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 93–379 (1993) ("At the outset of the representation the lawyer should make disclosure of the basis for the fee and any other charges to the client. . . . Initial disclosure of the basis for the fee arrangement fosters communication that will promote the attorney-client relationship.").

[4] The issues of written fee agreements and settling fee disputes have been before the court in a rules petition and probably will come before the court again in the report of the Ethics 2000 Committee recommending changes in the rules.

[5] *Estreen v. Bluhm*, 79 Wis. 2d 142, 255 N.W.2d 473 (1977).

[6] Majority op., ¶¶ 50–51.

¶ 68. In short, clients should pay their bills for legal services timely. Attorneys should be able to collect their fees and interest (if interest is part of the agreement). DeWitt reserved the right to charge interest and should be able to exercise that right, but not retroactively. A client should get notice of the attorney's exercise of the contract right to charge interest; a client should not be placed at the mercy of an attorney's decision to seek interest retroactively with a date arbitrarily selected by the attorney.

¶ 69. For the reasons set forth, I write separately on this issue.

¶ 70. N. PATRICK CROOKS, J. *(dissenting in part, concurring in part).* I disagree with the majority's conclusion that DeWitt did not make a valid settlement offer in this case. Majority op., ¶ 42. Instead, I agree with the court of appeals that DeWitt's offer of settlement was valid and permissible under Wis. Stat. § 807.01(3). Nevertheless, I reach my conclusion based on the plain language of § 807.01(3) instead of the reasonableness test used by the court of appeals. *See DeWitt Ross & Stevens v. Galaxy Gaming,* 2003 WI App 190, ¶¶ 31–32, 267 Wis. 2d 233, 670 N.W.2d 74. I also disagree with the majority of the court of appeals' analysis pertaining to interest. *Id.,* ¶¶ 55–65. I would allow the recovery of interest in accord with Wis. Stat. § 807.01(4), in addition to contract interest. Recognizing that the majority of this court does not address the interest issue, with respect to the remaining issues that it does address, however, I am in agreement.

[7] *Id.,* ¶ 51.

¶ 71. The majority contends that the proper approach to determining whether Wis. Stat. § 807.01 permits such conditions as the 15–day deadline for payment is to "look to the language of the statute to interpret and apply its express provisions." Majority op., ¶ 35. Since nothing authorizes the placement of conditions on payment under § 807.01, the majority concludes that an offeror cannot impose conditions on payment. *Id.*, ¶ 36. The majority rejects the reasonableness standard utilized by the court of appeals, and, instead, rejects its own earlier test and concludes that the applicable test for whether a particular condition may be included in a settlement offer is whether "the provision specifies a remedy that could be imposed by the court." *Id.*, ¶ 42. Thus, because it concludes that a judge could not enter a judgment requiring the Companies to make payment in 15 days, the majority contends that DeWitt could not impose such condition itself. *Id.*

¶ 72. I agree with the court of appeals' approach to this issue with respect to its interpretation of Wis. Stat. § 807.01(3). Section 807.01(3) provides no express prohibition against the inclusion of a payment deadline in an offer of settlement. Section 807.01(3) simply provides that "the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs." There is no bar contained within the plain language of the statute itself that would render DeWitt's settlement offer invalid.

¶ 73. Instead of the reasonableness test suggested by the court of appeals, I believe that the correct approach is to look to the plain language of Wis. Stat. § 807.01(3). Section 807.01(3) provides, in relevant part, that "[i]f the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the

taxable costs." Based on the statutory language, I disagree with the majority and conclude that conditions are not prohibited in offers of settlement. When a condition is present in a settlement offer and a judgment is later obtained in the case, a court should review whether the judgment obtained by a party is more favorable than the settlement offer including conditions, if any, therein. By applying the statutory language, I conclude that DeWitt made a valid settlement offer, since the judgment obtained was for more money and, therefore, was more favorable. It is possible that attaching certain types of conditions to a statutory settlement offer may result in a conclusion by a court that the judgment obtained is not in fact "more favorable" than the settlement offer for purposes of the statute. However, the 15–day condition on payment contained in the statutory settlement offer in this case does not render the settlement offer invalid under the statute; nor does it preclude a conclusion that the judgment obtained was more favorable than the settlement offer for purposes of § 807.01 (3) and (4).

¶ 74. Although I agree with the majority of the court of appeals' conclusion regarding the validity of the settlement offer, I strongly disagree with its conclusion regarding interest. The court of appeals stated that it was bound by its decisions in *Upthegrove v. Lumbermans Ins. Co.,* 152 Wis. 2d 7, 447 N.W.2d 367 (Ct. App. 1989) and *Erickson v. Gundersen,* 183 Wis. 2d 106, 515 N.W.2d 293 (Ct. App. 1994) and, thus, concluded that the analyses set forth in those cases controlled the outcome here. *DeWitt,* 267 Wis. 2d 233, ¶ 62. Yet, as Judge Dykman points out in his dissent, those cases do not involve the issue presented here, namely whether allowing interest in accord with Wis. Stat. § 807.01(4) in addition to contract interest is permissible. *Id.,* ¶ 74.

¶ 75. *Erickson* was a case involving the issue of whether a litigant was entitled to both common law prejudgment interest and interest under Wis. Stat. § 807.01(4). The question of contract interest in addition to § 807.01(4) interest was not discussed at all in *Erickson,* so that case is not helpful here. *Upthegrove* involved the issue of whether interest from § 807.01(4) and Wis. Stat. § 628.46 could be stacked one on top of the other. *Upthegrove,* 152 Wis. 2d 7 at 12–13. Whether two distinct statutory provisions regarding interest may be utilized presents an entirely different question than whether § 807.01(4) interest may be recovered along with contract interest. Those cases do not provide any guidance for the resolution of the issue presented here.

¶ 76. Most convincingly, the plain language of Wis. Stat. § 807.01(4) allows for the recovery of such interest, without any limitation concerning contract interest. Section 807.01(4) states, in relevant part:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid.

¶ 77. I, like Judge Dykman in his dissent, am not persuaded that silence in a statute means that a party is barred from recovering Wis. Stat. § 807.01(4) interest in addition to contract interest. Such an approach —silence equals prohibition—appears illogical and contrary to the language of the statute.

¶ 78. Although I am in disagreement regarding the issue concerning a valid offer, I agree with the majority of this court on the remainder of the issues it discusses. More specifically, I agree that Southwest's guaranty to make "timely and full payment of all statements for services rendered and disbursements/expenses incurred on behalf of the Partnership" bound it to pay accrued interest as well. Majority op., ¶ 43. I also agree that DeWitt could charge the Companies interest retroactive to January 1, 1997, since the retainer letter's terms provided that interest would accrue if payment was not made within 20 days of receipt of the monthly statement. *Id.*, ¶ 51. Finally, I agree that DeWitt could recover the costs of both a videographer and a court reporter taking the same deposition, pursuant to Wis. Stat. § 814.04(2). *Id.*, ¶ 58.

¶ 79. In summary, I conclude that DeWitt made a valid settlement offer to the Companies. I further conclude that DeWitt was entitled to recover interest under Wis. Stat. § 807.01(4) in addition to the interest provided for in its contract with the Companies. I do agree, however, with the majority on the remainder of the issues it discusses.

¶ 80. For the foregoing reasons, I respectfully dissent in part and concur in part.

¶ 81. I am authorized to state that Justice DIANE S. SYKES joins this dissent/concurrence.